CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF MUNDELEIN *et al.*, Defendants-Appellants.

Second District    Nos. 80-80, 80-209 cons.

Opinion filed July 7, 1980.—Rehearing denied August 5, 1980.

Charles F. Marino, of Chicago, for appellants.

Conzelman, Schultz, Snarski & Mullen, of Waukegan, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Lake County which granted a preliminary injunction whereby the village of Mundelein was enjoined from entering upon a certain legally described easement for the purpose of installing a replacement sewer thereon and from the further declaratory judgment that the village had only one easement, being that in the route of the presently existing sewer and that it had no rights in the originally described easement it obtained in 1926.

In 1926 the village obtained a grant of easement 20 feet wide across the land in question from Samuel Insull, the then owner of the property, for the purpose of laying a sanitary sewer beneath the surface of the land which would connect with the sewer treatment plant of the village, also located on land acquired from Insull. The route of the easement was particularly described in legal terms customary in a legal survey; however, apparently, either through inadvertence or from choice, the actual sewer line did not conform to the easement and in some places deviates as much as 150 feet from the route granted by the easement. Thus, a considerable part of the actual sewer line lies outside the easement described.

It is claimed by the village, and not disputed by the plaintiffs, although they do not concede that such is the case, that the error was not known to the village nor, presumably, to the landowners, until 1977. In that year, the sewer line being worn out and in need of replacement, a survey was made for a proposed relocation of the sewer line to a more efficient route a few hundred yards east of the original route granted by the easement. At that time the legally described easement was found to be somewhat west of the actual sewer line, and much of the actual grant had never been used. Since the village had grown in the ensuing 50 years since the easement was granted and the sewer line needed to be enlarged as well as being replaced, the village proposed to the plaintiffs that the present sewer line be abandoned and that the owners grant the village a new easement in the more efficient location, whereupon the village would surrender or abandon its original unused route and would take up and remove the actual sewer line now in use wherever it was less than five feet from the surface of the land.

Negotiations for the exchange of easement went on for over a period of a year, the stumbling block being that the plaintiffs were seeking certain concessions from the village in connection with the volume of sewage to be handled as well as the cost of sewage treatment to sites on their land. The plaintiffs intend to develop their land—some 1,400 acres— and were apparently seeking to gain some advantage for this property when the sewer was replaced, in return for their consent to relaying the sewer in the location preferred by the village. At length the negotiations broke down and the village then went back to the original easement—

which it had largely not used—and let bids for the construction of a 48-inch, instead of the existing 27-inch, sewer line—along the route of the original easement (which route, as noted above, differed considerably from the actual original grant of easement). In letting bids for the new 48-inch sewer line along the route of the original easement, the village announced its intention of removing all of those portions of the existing 27-inch sewer which were closer than five feet from the surface of the ground and making compensation to the plaintiffs for any disturbance of the ground and any loss of crops resulting from the tearing up of the old sewer and the laying of the new one. It was conceded by the village that some temporary trespass would be inevitable in the building of the new sewer since the original 20-foot easement would not give sufficient room for laying the new 48-inch sewer, and some temporary incursion into the adjacent land would no doubt accompany the construction and laying of the new sewer line. The offer to exchange the original sewer easement for the new easement preferred by the village was rejected by the plaintiffs, who continued to demand substantial concessions in the way of service and favorable price differential for the 1400 acres of land they own. When the village began preliminary digging along the route of the original easement, after negotiations had broken down for an exchange of easements, the plaintiffs commenced this action for an injunction to prevent the laying of the 48-inch sewer line along the original easement and also prayed for a declaration that the village had available only one easement, which was the easement it acquired by using the actual sewer line instead of the legally described line granted by the original easement.

In this appeal from a judgment along the lines prayed for by the plaintiffs, the village contends that (1) it still retains the right to use the original easement, not having abandoned it by using another route, whether by inadvertence or preference; (2) the replacement of the original 27-inch sewer by the new proposed 48-inch sewer is not a violation of the easement but such replacement is implicit in the original grant of easement; (3) the village is not estopped from using the original easement by nonuse of that easement over a long period of time and (4) there is no sound basis for issuance of an injunction since (a) it will disserve the public interest and (b) no substantial injury will be done to the plaintiffs by the laying of the new sewer in a slightly different location from the present actual sewer.

In finding in its judgment order that the village presently has no easement except a 20-foot easement along the actual sewer line, the trial court was evidently of the opinion that the village had abandoned the original easement by using another route over a long period of time— whether the deviation from the actual grant was inadvertent or intentional is not indicated by the judge, on which point he made no finding.

We believe the trial court erred in finding an abandonment of the original easement occurred. The evidence adduced at trial does not indicate the reason for the deviation from the route of the grant of easement; however, so far as can be determined from the record, it may not have been intentional but a mistake of the surveyor. Thus, we do not see any basis for either a finding that the original easement was abandoned or that the use of the erroneous route gave the village a substituted easement by acquiescence of the owner, along the line of the actual sewer, which in time ripened into a prescriptive easement.

■■ We do not believe that any legal rights were either acquired or lost by laying a portion of the actual sewer line outside the described easement where neither party, apparently, was aware of the deviation. There is no evidence that either party ever had knowledge of the deviation of the actual sewer line from the language of the granted easement. The village contends it did not realize a divergence had occurred, and there is no way of establishing otherwise at this late date. The user was not adverse or hostile since it was not under a claim of right to the land actually used and it could not be said to be open or notorious because neither party, apparently, was conscious that the sewer line had strayed from the grant of easement. Thus, we see no prescriptive rights as being gained by the village nor any rights lost by prescription to the plaintiffs. As stated by the supreme court in *Poulos v. F. H. Hill Co.* (1948), 401 Ill. 204, 214:

> "[T]o establish a way by prescription the use must be adverse, uninterrupted, exclusive, continuous and under a claim of right for a period of twenty years."

The trial court held, however, that not only did the village gain an easement in its use of the plaintiffs' land for some 50 years but also that the village lost its original easement by the use of the actual sewer line outside of the grant of easement. This apparently was on the theory of an abandonment of the original easement.

■■ ■ The court did not indicate the basis for its finding that the village had lost its original easement, but presumably it was on the basis of the use of the new sewer line and abandonment of the original easement, since no affirmative act is shown to have been done to release or exchange the easement. It is claimed that there was acquiescence to the new location by the plaintiffs or their predecessors, but there is no evidence in the record on this. While in some rare instances a municipality has been held to have lost an easement by abandonment, such cases are generally based on an estoppel, where the other party has been prejudiced by a change in position induced by an appearance of abandonment. It appears to be the law in Illinois that a municipality cannot be estopped to use an easement it has never expressly abandoned, except where the sudden use of the

easement, after a long period of apparent abandonment, would prejudice the other party, who has relied on the apparent abandonment and changed his position, thus creating an estoppel *in pais*. (See *Zemple v. Butler* (1959), 17 Ill. 2d 434; *Kennedy v. Town of Normal* (1934), 359 Ill. 306; *Lowenthal v. City of Highland Park* (1966), 70 Ill. App. 2d 236; Annot., 44 A.L.R.3d 257, 289 (1972).) No such circumstances are present here, the land being unimproved farm land and no material change of position having occurred. It is clear, therefore, that the actions of the village in either inadvertently or with deliberate intent using a strip of land outside of the easement over a long period of time—without apparent prejudice to the owner—while failing to make use of its actual grant of easement—did not constitute an abandonment of the village's actual easement. Under the circumstances of this case, we see no evidence supporting the theory that there was an abandonment of this original easement. See *Kurz v. Blume* (1950), 407 Ill. 383, where a nonuse, even by a private grantee, was not held to have constituted an abandonment of the easement.

■ It is also contended by the plaintiffs that the village would be exceeding the rights granted it under the easement by replacing a 27-inch sewer with a 48-inch sewer. In *Heuer v. Webster* (1914), 187 Ill. App. 273, 278, the court cited the language of the English case of *Newcomen v. Coulsen* (1876), 5 Ch. Div. 133, to the effect that " '* * * the right of way is one including the right of improving, from time to time, according to the improvements of the age,' " in upholding an expanded use of an easement. In *Weaver v. Natural Gas Pipeline Co.* (1963), 27 Ill. 2d 48, the court held that the replacement of an original four-inch sewer pipe with a new 10-inch sewer pipe was within the intention of the easement and in *Talty v. Commonwealth Edison Co.* (1976), 38 Ill. App. 3d 273, the Third Appellate District held that an easement for a transmission line was not violated by replacing the original 220-volt line with a 345-volt line and the existing 30.3-square-foot foundation with a 45.4-foot foundation. In the case before us, the testimony indicated the population of the village had grown from a small village in 1926 to over 18,000 inhabitants at present, and the need for an enlarged sewer capacity is obvious. It hardly requires argument to establish that the sewer needs expansion and, in our opinion, its expansion from a 27-inch to a 48-inch diameter is reasonably within the purposes of the original easement. In *Weaver v. Natural Gas Pipeline Co.*, the supreme court said:

> "It is well established that where an easement is created by express grant, the extent of the right acquired depends not upon user, as in the case of easements by prescription, but upon the terms of the grant. (28 C.J.S. Easements sec. 75.) Furthermore, the

practical construction placed upon the instrument by the acts of the parties is to be considered only if there is an ambiguity." (27 Ill. 2d 48, 50.)

In this case, the village's consulting engineer testified that the present sewer was "overloaded," "worn out," and "in need of replacement." The easement under consideration was an express grant free of any ambiguity and was not strictly limited to the use of the easement, as the plaintiffs contend. We think that in line with the cases cited above the use must be allowed a practical interpretation in accordance with the reasonable need to be expected in the future.

■■ In ruling that the village had lost its right to use the original easement—which it referred to as the "described path"—the court evidently adopted the plaintiffs' argument that to allow the village to revert to using the original easement to install the new contemplated 48-inch sewer line would in effect give the village "two easements for the price of one in violation of the constitution." The catch phrase "two easements for the price of one" is used by the plaintiffs in disregard of the actual facts. It is clear from the testimony of the village's witnesses and the arguments before the court that the village has never claimed the right to use two easements and has never used two "easements." While the village used only a part of the granted easement and in part trespassed beyond that easement with its actual sewer line, it needed and used only one path for its sewer. The actual path was partly within the legally described path and partly a divergence from that path, which neither the village, as far as the record indicates, nor the plaintiffs, ever took cognizance of as a separate easement. Nor could the divergence become a new and separate easement without the consent of the grantor. (See *Sullivan v. Bagby* (1929), 335 Ill. 192; *Triplett v. Beuckman* (1976), 40 Ill. App. 3d 379.) What it amounts to is simply an easement which the grantee diverged from in some places unknown to either the grantor or the grantee. Since the parties never agreed, so far as is indicated, to change the location of the easement, it was not a relocation and was more in the nature of a simple trespass where the sewer line diverged from the easement originally granted. The statement of the village attorney and the testimony of the village's consulting engineer make it clear that the village has no intention of using the existing sewer line after completion of the new sewer within the legally described easement. While use must be made of the existing sewer until the new one is completed, only one line will actually be used at any one time. Naturally, sewer service must be maintained during the period of construction of the new sewer but this is a practical necessity for the community and does not necessarily denote a claim of an additional easement by the village. The village obviously does

not intend to operate the existing sewer any longer than it will take to construct the new one, so the fact that it will retain the use of the existing sewer while it is constructing the new one reflects only the exigencies of the community's sewer problem, not the village's intent to obtain an additional easement.

The village has also made it a condition of the new sewer construction contract that the existing sewer line be entirely removed in any place where it is less than five feet from the surface. It is true, of course, that the village contended in its brief and its oral argument that it had obtained an easement by prescription over the 50-year period in which it used the divergent sewer line, but since the village admits at the same time that it was not aware of the deviation from the original granted easement and thus could not have made a claim adverse or hostile to the rights of the owner, this idea of a right of easement by prescription does not have any legal basis.

On the basis of the record before us, it is clear that the village did not abandon or exchange its original grant of easement and still retains it. While we are of the opinion that the village did not gain any rights by prescription through its trespass beyond the path of the legally described easement, neither did it lose the rights it already had and, as the cases cited above indicate, its right of easement was not defeated by the mere passage of time and the nonuse of the easement. The authorities cited also indicate quite clearly that a municipality will not be held to have abandoned an easement by nonuse where no third person's rights have been prejudiced in reliance on an appearance of abandonment. Thus, the village still retains its original easement, and the injunction prohibiting it from using it to construct a needed enlarged sewer should be dissolved.

The judgment of the circuit court of Lake County is accordingly reversed.

Judgment reversed.

SEIDENFELD, P. J., and NASH, J., concur.