NORMAN L. SIDER, Trustee in Bankruptcy for James Chisholm & Son, Inc., Plaintiff-Appellant, v. OUTBOARD MARINE CORPORATION, Defendant-Appellee.

Second District   No. 2—86—0589

Opinion filed August 17, 1987.—Rehearing denied October 5, 1987.

Richard J. Friedman, of Leoris & Cohen, P.C., of Highland Park, and John F. O'Meara, of Chicago, for appellant.

Leslie A. Peterson, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan (Louis W. Brydges, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Norman L. Sider, trustee in bankruptcy for James Chisholm & Son, Inc., appeals from orders of the trial court granting defendant Outboard Marine Corporation's motions to dismiss count I of plaintiff's fifth amended complaint, granting defendant summary judgment as to count III of the fifth amended complaint and striking the affidavit of plaintiff's expert witness from plaintiff's response to defendant's motion for summary judgment.

James Chisholm & Son, Inc., was a distributor of "Lawn Boy" products such as power mowers, parts, and accessories which were manufactured by the Lawn Boy Product Group of the defendant, Outboard Marine. Chisholm became a distributor of defendant's products in 1963, operating under an oral agreement. In 1968, defendant determined that a written agreement was preferable, and the parties entered into a written agreement which remained substantially the same over the years, including the 1981 model year. The agreement contained the following pertinent provisions:

"7. RESERVATION: Company reserves the right, at any time and from time to time, to take any one or both of the following actions: (a) sell directly to dealers and others in the territory, and (b) appoint other distributors in the territory, if the company in its sole discretion shall deem such action desirable for any reason, and in no case shall Company have any liability to

Distributor.

\* \* \*

12. TERMINATION: Either party may terminate this Agreement without cause at any time on 90-days' written notice to the other party. In the event either party \*\*\* violates any provisions of this Agreement, including failure to pay promptly for merchandise \*\*\*, the said other party shall have the right, at its option, to terminate this Agreement immediately, such termination to be effective as of the date of the occurrence of the event giving rise to the option to terminate.

\* \* \*

14. EFFECTIVE DATE: This Agreement, when accepted by Company shall be effective from the date of such acceptance to June 30, 1981, on which date it shall expire unless sooner terminated, as provided herein."

Except for the year 1979, defendant's products constituted 60% of Chisholm's sales.

Chisholm cultivated and trained a network of 200 dealers in its market and maintained a service and sales training school 52 weeks a year on its premises for dealers in defendant's products. By 1979, Chisholm's purchases constituted 60% of defendant's business for that year.

However, beginning in 1980, the relationship between the parties began to cool. According to plaintiff, defendant refused to acknowledge that the market for defendant's products was declining in the wake of the recession and the glut of snowblowers which had accumulated in the inventories of Chisholm and its network of distributors due to the lack of appreciable snow since 1979. Despite a letter to this effect from Roger Chisholm, one of Chisholm's owners, to defendant, defendant continued to press for payment and full shipments of lawnmowers. At the same time, the bank with which Chisholm did business and which was charging interest at the rate of 22%, was insisting that Chisholm decrease the size of its inventory. Chisholm also complained that defendant was eroding away its good relations with its dealers by offering other merchandisers better deals. On the other hand, defendant blamed Chisholm for low sales due to weak financial management at Chisholm and failure to sell aggressively. Defendant indicated on several occasions in both 1980 and 1981 its dissatisfaction with plaintiff's sales performance and concern with the financial well being of the company.

On March 7, 1981, Roger Chisholm wrote to Steve Wood, defendant's district sales manager, and Thomas Reynolds, national sales

manager, explaining the market conditions in 1980 and 1981, as well as the changes in the mass merchandising accounts and the various problems with those accounts. In response, Reynolds advised Chisholm that it appeared Chisholm's organization was totally inadequate to provide the necessary marketing support for defendant and requested that Chisholm reply with a plan to remedy the situation. However, no plan was forthcoming from Chisholm.

According to Roger Chisholm, at the national sales convention in June 1981, Thomas Reynolds told him that Chisholm was doing a great job. Roger Chisholm took that to mean that Chisholm could go ahead with its commitments to the defendant made in his letter of March 7, 1981, and further, assured him that the 1982 agreement would be signed in October as in the past. Chisholm expended $121,855 on advertising defendant's merchandise. Chisholm continued to sell Lawn Boy products and took orders for the delivery of the 1982 new model merchandise.

In July 1981, defendant's representatives met with Roger and Alex Chisholm to discuss Chisholm's solvency and low sales performance. Chisholm was informed that defendant was terminating its line of credit and would thereafter sell to Chisholm only for cash. According to one of defendant's representatives, either Roger or Alex Chisholm indicated that they would review the situation with their bankers and were considering selling the company while it was still solvent. At another meeting on August 8, 1981, defendant demanded a $600,000 line of credit from Chisholm for additional funds with which to buy more products from the factory over and above the existing credit line. Chisholm obtained a $600,000 line of credit from Lake Shore National Bank. However, in September, defendant insisted that $250,000 of the line of credit be applied to future and past purchases rather than just to future purchases as had been agreed upon. Plaintiff refused to agree to the change. Further, though according to Chisholm its sales people had obtained $1,410,730.62 in orders for defendant's products which would have realized a profit for plaintiff in the amount of $311,000, defendant refused to sell except for cash.

On October 17, 1981, defendant advised Chisholm that defendant did not intend to enter into a 1982 model year (July 1, 1981, to June 30, 1982) distributorship agreement with Chisholm. On December 1, 1981, defendant notified all of plaintiff's dealers that they could continue to deal with Chisholm until March 1, 1982, or with the new distributor, OMC-Lawn Boy Distributor Chicago, a company-owned distributorship which was to open on December 14, 1981.

Thereafter, Chisholm filed suit against defendant alleging that defendant concealed its decision not to renew its distributorship agreement with Chisholm until after Chisholm had advertised, promoted, and taken orders for defendant's new line, and that defendant refused to fill orders obtained by Chisholm or to reimburse Chisholm for its lost profits and expenditures, defendant electing instead to fill the orders from the newly established company-owned distributorship, all of which resulted in damage to Chisholm.

After suit was filed, Norman L. Sider, as trustee in bankruptcy, was substituted as a party plaintiff for Chisholm by order of the bankruptcy court. On defendant's motion, the trial court dismissed count I of the fifth amended complaint, which alleged bad-faith termination of a contract implied in fact, and granted defendant summary judgment as to count III which alleged a violation of section 1 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*). The trial court also granted defendant's motion to strike the affidavit of plaintiff's expert witness which was part of plaintiff's response to defendant's response to defendant's motion for summary judgment. This appeal followed.

Following the filing of briefs in this case, defendant filed a motion to strike plaintiff's reply brief. Plaintiff then filed objections to the motion to strike. We have ordered the motion to strike and plaintiff's objections thereto taken with the case.

■■■ Plaintiff contends, first, that the trial court erred in granting defendant's motion for summary judgment as to count III of the fifth amended complaint. Plaintiff relied on the following portions of section 1 of the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*):

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." Ill. Rev. Stat. 1981, ch. 121½, par. 262.

Count III alleged that defendant had violated the Act since, in light of Chisholm's precarious financial situation, the long-standing practice of holding over the distribution agreement from June 30 to October of each year, the commitments of plaintiff for advertising and promotion of the 1981 summer lawn care season, and the apparent

long-standing plan of defendant's to take over the territories of its distributors, one of whom was plaintiff, it was the duty of the defendant not to misrepresent its intentions with regard to renewal of the distributorship agreement. Count III further alleged that defendant was guilty of concealment within the meaning of the Act, in that it failed to advise Chisholm that the distributorship would not be renewed when, in fact, defendant knew that Chisholm was relying on the renewal of the agreement and, in fact, led Chisholm to believe that the agreement would be renewed. Count II also alleged that defendant was guilty of misrepresentation within the meaning of the Act, in that defendant encouraged Chisholm to commit its sales force to solicit orders for defendant's products, encouraged Chisholm to commit expenditures for the summer 1981 sale, and continued to sell parts to Chisholm, which conduct reasonably induced plaintiff to believe that the distributorship agreement would be renewed.

Summary judgment is proper where the pleadings, depositions, and admissions on file, together with affidavits, show that there is not a genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. (*Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 164; Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) In ruling on a motion for summary judgment, the trial court looks beyond the pleadings of the parties; even when those pleadings seem to raise issues of fact, summary judgment is appropriate if those issues are not supported by evidentiary facts. (*Brunsfeld v. Mineola Hotel & Restaurant, Inc.* (1983), 119 Ill. App. 3d 337, 341.) In granting the defendant's motion for summary judgment, the trial court found that plaintiff had failed to put forth any facts which would even arguably entitle it to a judgment in its favor in count III. However, plaintiff cites the following facts as evidence that defendant concealed its termination of Chisholm's distributorship in order to profit from plaintiff's outlay for advertising and products with the opening of a company-owned distributorship: the timing of the actual termination (too late in the season for plaintiff to negotiate with other manufacturers); defendant's decision to require Chisholm to use its line of credit to prepay current merchandise, not just future purchases as had previously been agreed to; the opening of the company-owned distributorship shortly after Chisholm's distributorship agreement was not renewed; Thomas Reynolds' statement to Roger Chisholm at the national sales convention to the effect that Chisholm was doing a fine job, a statement relied upon by Chisholm as assurance that its relationship with defendant would continue; and a statement by Reynolds on his discovery deposition to the effect that the decision to terminate

Chisholm was actually made in June 1981.

■ On the other hand, defendant contends that while plaintiff cited breakdowns in communications and failure to ship products as proof of defendant's preconceived plan of termination, the depositions of both Roger and Alex Chisholm revealed that the two companies continued to discuss the situation between June and October 1981 and that Chisholm owed money for shipments. Yet invoices showed that shipments from defendant to Chisholm were continually made up until October 1981. While plaintiff insists defendant must have planned the termination of its relationship with Chisholm well in advance of October 1981 due to the speedy opening of the company-owned distributorship, the uncontroverted deposition testimony was that defendant began looking for a site on November 9, 1981, located one on November 15, 1981, and that due to the suddenness of the decision to open a company distributorship, the efforts to open it were chaotic. Further, the deposition testimony of Jerry Shadley, the former manager of the company-owned distributorship, indicated that the first time he heard that Chisholm was not going to be renewed as a distributor was in October 1981 and that the first time he heard that defendant was going to open a company-owned distributorship was also in October 1981.

Both parties point to the discovery deposition of Thomas Reynolds as support for their respective positions as to when defendant made the decision to terminate Chisholm. The pertinent portion of Reynolds' discovery deposition is as follows:

"Q. When is the first time that you heard that Chisholm was not going to be renewed?

A. The year was of course 1981, I'm a bit lost to recall if it was specifically the spring.

Q. It was around the time you wrote the letter, the March 20 letter?

A. Closer to the sales meeting time which would have been—

Q. In June?

A. In June.

Q. Do you recall telling them about that?

A. Yeah.

Q. I'm talking about the Chisholms?

A. No, the Chisholms, no. Verbally, no; certainly I did not."

In its memorandum order granting the motion for summary judgment, the trial court considered the effect of the above-quoted deposition testimony and determined that since in answer to questions

asked immediately prior to the above-quoted testimony, Reynolds had indicated that there were prior discussions as to alternatives available to deal with the Chisholm situation, and that immediately after the above-quoted testimony, Reynolds had, in response to the question asked by another attorney, stated that no decision to terminate Chisholm had been made prior to October 17, 1981, Reynolds had been confused and misunderstood the question. Further, the trial court noted that in his evidence deposition, Reynolds testified that the decision to terminate Chisholm was made between October 17 and November 10, 1981, and that to the best of his knowledge, prior to October 17,1981, there was no plan to open a company-owned distributorship.

Eliminating Reynolds' contradictory testimony, the evidentiary facts relied on by plaintiff do not tend to prove the existence of a plan on the part of defendant to conceal its termination of its relationship with Chisholm, particularly in view of the uncontradicted testimony of defendant's past and present employees. Therefore, we conclude that the trial court did not err in granting summary judgment to defendant as to count III.

■ Plaintiff contends, next, that the trial court erred in dismissing count I for failing to state a cause of action.

In count I, plaintiff attempted to allege a breach of contract on the basis that there was a holdover of the contractual provisions under the 1981 agreement which had expired on June 30, 1981, because the parties continued to do business on the same terms after the expiration of the 1981 agreement and defendant encouraged Chisholm to continue. According to plaintiff, the contract was breached when defendant refused to fill Chisholm's orders placed between July 1 and October 17, 1981, and later filled the orders through its company-owned distributorship. As a result, plaintiff claimed lost profits of $335,000.

" 'To state a cause of action a complaint must be both legally and factually sufficient; it must set forth a legally recognized claim as its basis for recovery and must plead facts which bring the claims within the legally recognized cause of action alleged. [Citation.] Failure to meet both requirements mandates dismissal of the complaint. [Citation.]' " Torres v. Divis (1986), 144 Ill. App. 3d 958, 961, citing Doyle v. Shlensky (1983), 120 Ill. App. 3d 807, 811.

Plaintiff argues that defendant entered into a new distribution agreement with Chisholm after the termination of the 1981 agreement based upon the conduct of the parties in continuing to do business with one another. Further, since "good faith" is an element of

every contract (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272), defendant had a duty to act in good faith toward Chisholm, *i.e.*, not to conceal its intentions to terminate the parties' relationship. Whether the parties have acted toward each other in good faith is a question of fact reserved to the sound discretion of the trier of fact. *Central National Bank v. Fleetwood Realty Corp.* (1982), 110 Ill. App. 3d 169.

Plaintiff relies on *Carrico v. Delp* (1986), 141 Ill. App. 3d 684. In that case, the plaintiffs obtained a line of credit at the defendant bank. However, under the terms of the agreement, the bank, in its discretion, could determine whether or not to make the loan to the plaintiffs. The bank thereafter refused to make any further loans to plaintiffs. The plaintiffs sued the bank. The trial court granted the bank's motion to dismiss certain counts of the plaintiffs' complaint, and plaintiffs appealed. The appellate court reversed, holding that good faith between the parties requires the party vested with contractual discretion to exercise it reasonably, and he may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. (141 Ill. App. 3d 684, 690.) Likewise here, the plaintiff argues, although defendant had authority to modify credit terms and to cancel the agreement upon 90 days' notice, it had no right to do so simply to cut off Chisholm's earned profits and avoid paying the expenses incurred by plaintiff while reaping the profits.

■■ ■ In order to properly plead a cause of action for breach of contract, the pleader must allege the existence of a contract, plaintiff's performance of all contractual conditions required of him, facts of defendant's breach, and the existence of damages as a consequence thereof. (*Bartlett Bank & Trust Co. v. McJunkins* (1986), 147 Ill. App. 3d 52, 61-62.) While the drafters of a complaint must strike a balance between pleading too little or too much factual detail, the drafter must plead ultimate facts. (*Powers v. Delnor Hospital* (1985), 135 Ill. App. 3d 317, 319.) It is not always easy to differentiate between conclusions, ultimate facts, and evidence for pleading purposes, in part because the law has taken the pragmatic view that the classification of an allegation is to some extent dependent upon the context of the particular case in which it is made. 135 Ill. App. 3d 317, 319.

■■ ■ As with all pleadings, a court must liberally construe a complaint so as to do substantial justice between the parties. (Ill. Rev. Stat. 1981, ch. 110, par. 2—603(a).) A motion to dismiss a complaint admits as true all properly pleaded facts and should not be granted unless it clearly appears from the pleadings that plaintiff would not be entitled to recover under any set of facts which could be proved.

*Powers v. Delnor Hospital* (1985), 135 Ill. App. 3d 317, 319.

In *Gaslite Illinois, Inc. v. Northern Illinois Gas Co.* (1976), 46 Ill. App. 3d 917, this court stated as follows:

" 'It is often said that the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, whether oral or written, while in the latter their agreement is arrived at by a consideration of their acts and conduct and that in both of these cases there is, in fact, a contract existing between the parties, the only difference being in the character of evidence necessary to establish it.' [Citation.]" 46 Ill. App. 3d 917, 923.

■ After reviewing the complaint in this case, we conclude that plaintiff has failed to plead sufficient facts in count I to establish the existence of a contract implied in fact or the breach of such a contract. In count I, plaintiff enumerates the various acts undertaken and the expenditures incurred by Chisholm in good-faith reliance upon the existence of a contract between the parties. However, other than place promotional material with Chisholm, the allegations of defendant's acknowledgement of the existence of this contract were primarily that defendant had knowledge and approved of Chisholm's activities. Further, even if sufficient allegations to support the existence of a contract implied in fact had been pleaded here, since under the terms of all of the agreements, either party could terminate the agreement at will upon notice, there must still be sufficient facts pleaded to establish a breach of the agreement. We find that *Carrico v. Delp* (1986), 141 Ill. App. 3d 684, is distinguishable from the case at bar in that, unlike the situation here, the exercise of the bank's discretion completely defeated the sole purpose of the line of credit agreement.

Accordingly, we find no error in the trial court's decision to dismiss count I.

■ Next, plaintiff contends that the trial court erred in striking the affidavit of plaintiff's marketing expert.

As part of his response to defendant's motion for summary judgment, plaintiff filed the affidavit of L. Winston Ring, Ph. D., who was an expert in marketing. According to plaintiff, defendant was unable to produce records of its sales research for 1981 (records for 1980 showed that Chisholm had increased defendant's share of the Chicago market). Lacking the records from defendant to substantiate its improving performance in a chaotic market, plaintiff sought to establish it with Dr. Ring's affidavit. Defendant filed a motion to strike the affidavit. The trial court granted the motion to strike on the basis, first,

that the ultimate fact to be determined was not beyond the ken of the average juror, and second, because the affidavit was based upon speculation and conjecture.

Plaintiff argues that the rule that an expert's testimony on ultimate issues is admissible only upon subjects beyond the ken of the average juror is no longer the law and that now an expert may directly express his opinion on an ultimate issue if the testimony will aid the jurors' understanding. (*Watson v. State Farm Fire & Casualty Co.* (1984), 122 Ill. App. 3d 559.) In *Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, the court stated:

> "A trial court is afforded 'a wide area of discretion in permitting expert testimony which would aid the triers of fact in their understanding of the issues even though they might have a general knowledge of the subject matter.' [Citation.] ***
>
> *** Moreover, expert opinion testimony which is speculative or premised upon facts assumed to be true is admissible. [Citations.]" 128 Ill. App. 3d 493, 503-04.

Defendant argues that reconstruction evidence by an expert as to what appears to have actually occurred may not be used as a substitute for "eyewitness" testimony where it is available, unless it is necessary to rely on principles beyond the ken of the average juror. (See *Ralston v. Plogger* (1985), 132 Ill. App. 3d 90.) Defendant reasons that its employees were in fact "eyewitnesses" to the events which formed the basis of this lawsuit, and that therefore, the trial court correctly struck the affidavit of Dr. Ring.

Affidavits in support of or in opposition to a motion for summary judgment shall not consist of conclusions but of facts admissible in evidence. (*Jaffe v. Fogelson* (1985), 137 Ill. App. 3d 961.) The affidavit of Dr. Ring consists almost entirely of conclusions, without setting forth any of the facts which he relied upon, thus distinguishing the present case from *Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493.

We conclude therefore that the striking of Dr. Ring's affidavit was proper.

Finally, defendant has filed a motion to strike the plaintiff's reply brief alleging noncompliance with certain of our supreme court rules. Plaintiff in turn has filed objections to the motion to strike and seeks attorney fees pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611).

Deciding the case as we do, we see no point to allowing the motion to strike since it would serve no purpose. Instead, we have chosen to follow the philosophy expressed in *Mead v. Board of Review*

(1986), 143 Ill. App. 3d 1088, wherein this court stated as follows:

"Although we have the authority to dismiss an appeal for the appellant's failure to show substantial compliance with the rules of procedure [citations], and we are entitled to have the issues clearly defined and to have cited pertinent authority [citation], we believe a determination of the merits of the appeal, to the extent they are presented here by the plaintiff, may serve to conclude this long-standing litigation. We note, however, that to the extent that plaintiff's statement of facts or other matters in his brief and reply brief are not supported by the record, we will disregard, rather than strike, them [citation], and a contention which is supported by some argument but by no authority whatsoever will be considered waived [citation]." 143 Ill. App. 3d 1088, 1092.

Accordingly, defendant's motion to strike plaintiff's reply brief and plaintiff's motion for attorney fees are denied.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

NASH and HOPF, JJ., concur.