PROFESSIONAL EXECUTIVE CENTER, Plaintiff-Counterdefendant and Appellee-Cross-Appellant, v. La SALLE NATIONAL BANK, as Trustee, *et al.*, Defendants-Counterplaintiffs and Appellants-Cross-Appellees.

First District (6th Division) No. 1—90—1260

Opinion filed March 8, 1991.

Solomon & Behrendt, of Chicago, for appellants.

Rallow & Tepper, of Chicago (David T. Rallo and Frank F. Tully, Jr., of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:
This is an action for specific performance of an easement agreement brought in 1987 after defendant allegedly refused to permit

plaintiff to work on a septic field on defendant's land as permitted under their recorded easement agreement. In April 1989, defendant filed a counterclaim which sought to limit plaintiff's use of the septic field and for unspecified money damages resulting from overuse and the subsequent resulting damage to the septic field. The trial court dismissed the counterclaim in May 1989 and proceeded to trial on plaintiff's complaint. Thereafter the trial court issued its findings of fact and conclusions of law and entered an order in defendant's favor. Both plaintiff and defendant appeal the court's orders against them.

La Salle National Bank, as trustee, and Richard Rudnick, defendants-counterplaintiffs, appeal the dismissal of the counterclaim and raise these issues: (1) whether the owner of the servient estate is entitled to use the easement located on his property under the provisions of the easement agreement and Illinois law, and (2) whether use of the easement is barred by regulations governing septic fields. In its cross-appeal Professional Executive Center, plaintiff-counterdefendant, raises the issue whether the trial court erred in entering judgment in favor of defendant and against plaintiff on the complaint for injunction, specific performance and other relief.

In December 1979, defendants, Richard Rudnick and La Salle National Bank, as trustee, under trust No. 54138, sold the eastern two-thirds of a parcel of property in Wheeling, Illinois, to plaintiff, Professional Executive Center. Before the sale the single tract of land was subdivided into three parcels. Defendant retained parcel 3 and sold plaintiff parcels 1 and 2. Parcel 2 was improved with a two-story office building. A septic field that served the two-story office building lay beneath both plaintiff's parcel 2 and defendant's parcel 3.

Simultaneously with the 1979 sale a declaration of easements, covenants and restrictions was recorded, which is the subject of this lawsuit. The easement provides for plaintiff's use of the septic field, its continued maintenance and penalties for failure to maintain the septic field. Section 2.02 of the declaration grants plaintiff a nonexclusive easement over defendant's land on which the septic field is located as is "reasonably necessary" to permit plaintiff's use but with minimum interference with defendant's use and enjoyment of his land. Section 3.01 of the declaration specifies that each party would be entitled to use the portion of the easement located on his own property.

Section 3.02 of the declaration states that plaintiff and defendant are required to maintain and pay for upkeep on the portion of the easement on their respective parcels and further provides that defendant has the right to tie into the system at his own cost. Section 3.03 provides in part, "In the event that any Occupant shall fail to

properly maintain those portions of the Easement Parcels which are from time to time located on its Parcel (such Occupant being herein after referred to as the Defaulting Party), any other Occupant (hereinafter referred to as the Non-Defaulting Party) may send written notice of such failure to the Defaulting party. Such notice shall contain an itemized statement of the specific deficiencies (hereinafter referred to as the Deficiencies) in the Defaulting Party's performance of the Easement Parcel's maintenance to be performed by it. The Defaulting Party shall have ten (10) days after receipt of the said notice to correct the Deficiencies or in which to commence to correct the Deficiencies if the Deficiencies cannot be corrected within said ten (10) day period, and thereafter, to proceed diligently to complete the correction of the deficiencies. In the event that the Defaulting Party shall fail or refuse, for any reason to correct or to begin to correct the Deficiencies in a timely fashion, as the case may be, the Non-Defaulting party may, at its option, correct the Deficiencies. In the event that the Non-Defaulting Party shall exercise the said option and shall correct the Deficiencies, the Defaulting Party shall, promptly upon receipt from the Non-Defaulting Party of an itemized invoice for the costs incurred by the Non-Defaulting in correcting the Deficiencies, pay all costs to the Non-Defaulting party."

For several years after the land purchase, the septic system served plaintiff's needs, though on one occasion fill dirt had to be brought in to cover low spots on the field that hampered the system's efficiency. At trial, the following evidence was presented: a septic system is designed to serve buildings where access to public sewage lines is not available by carrying plumbing waste out of a building through pipes and into holding tanks underground. Here nine holding tanks serve the system, each successive one sitting at a slightly lower elevation to the one adjacent. Six of the tanks extend under defendant's property and three extend under plaintiff's property. Sewage pipes connect the holding tanks and permit some of the sewage to leave the system and soak into the gravel and soil around the pipes, providing a natural way for the sewage to break down and become part of the soil. The majority of the sewage pipes are located under defendant's property. If holding tanks or pipes connecting the tanks are in disrepair, the system is unable to function properly. In this case, plaintiff alleged the inadequacies and disrepair in the system caused frequent plumbing backups in its building and forced plaintiff to pump out its septic holding tanks on numerous occasions.

When problems in the system continued to worsen, plaintiff wrote to defendant on September 14, 1987, to inform him that it planned to

remedy the troubles by installing a lift station, a 500-gallon holding tank and new topsoil to the septic system, all on defendant's land. By the time the case was reached for trial, the plan was altered to instead provide for the creation of a swale, in part on defendant's property, a 100-foot-long, 10-foot-wide gradual depression in the land. The plan also called for the addition of a curtain drain on defendant's property which would consist of a 2½-foot-deep ditch filled with gravel. Plaintiff contended that the swale and curtain drain were designed to keep storm water away from the septic field with the major portion of the work to be done on defendant's land. The plan still required rebuilding or replacing much of the existing septic field underground boxes and piping and adding topsoil to the field. In the September 14, 1987, letter, plaintiff asked defendant for permission to do the work on defendant's property. Defendant through his attorney denied permission by letter dated September 22.

On November 16, 1987, plaintiff filed suit to compel defendant to permit plaintiff to do the work on defendant's property. The suit alleged that defendant had allowed his portion of the septic field to deteriorate to the point that it "is presently unable to adequately service the needs of the plaintiff and has sunken so as to create standing surface pools of water and permit raw sewage to percolate to the surface and otherwise operates at unreasonably low levels of efficiency and contrary to the intent and purpose of the grantor of the easement."

On April 4, 1989, defendant filed a counterclaim, seeking a permanent injunction against plaintiff's alleged excessive use of the septic field. He asked the court to enjoin plaintiff from use of the field by more than 40 occupants of the plaintiff's building and sought to enjoin plaintiff from directing any excessive discharges of liquid into the field so as to damage the field further. Defendant also sought unspecified compensatory damages "which may appear to be due" from plaintiff's misuse of the septic field.

On April 20, 1989, plaintiff filed a motion to dismiss the counterclaim, contending that defendant could not claim a right to use the septic field on defendant's own property because such use was prohibited by law under the Private Sewage Disposal Licensing Act (Ill. Rev. Stat. 1987, ch. 111½, par. 301 et seq.) and by the administrative rules promulgated pursuant to the statute at 77 Ill. Adm. Code §905.20 (1985). Plaintiff contended that the court could not consider defendant's claim of a right to use the septic field because administrative rules prohibit the use of a private sewage system to serve more than one property. Plaintiff alleged that, since the easement agree-

ment contains a severability clause, the defendant's use of the septic field was unenforceable although the rest of the easement agreement was enforceable. In addition, plaintiff argued that defendant failed to allege any actual injury or damage and that, therefore, the counterclaim was based on speculation of future damages and was not ripe for adjudication.

On May 5, 1989, the trial court granted plaintiff's motion to strike and dismiss defendant's counterclaim and denied defendant's motion for leave to file an amended counterclaim. The court gave no reason for its ruling when it dismissed the claim, but the court's order followed arguments from plaintiff and defendant on the motion.

Plaintiff's case proceeded to trial on the issues of whether plaintiff had the right to enter defendant's property and do the work on the septic field and whether defendant was interfering with plaintiff's rights under the easement agreement in refusing access and permission to do the work.

Peter Koch, a plaintiff partner, testified that septic backup problems began in the building 12 to 18 months after plaintiff moved into the building in 1978 and that in the two most recent years, plaintiff spent $2,065 to have the sewers in the building pumped out. On crossexamination, he testified that he submitted approximately six to nine proposals to defendant from 1980 to 1987 in a effort to remedy the situation but identified only one as having been made in writing; that proposal was dated September 14, 1987.

Plaintiff's expert engineer, Natalie Karney, testified that 40% to 45% of the septic field was not in use at all. She testified that overuse of the field was not the cause of the septic field's failure but instead that the system was failing because of excess rainwater which could not run off the field. She testified that simply replacing the broken drop boxes and repairing damaged sewage lines therefore would not remedy the problem. She testified that she made several recommendations for work on the field, including the proposal to build a lift station and holding tank and the proposal presented at trial to add a swale and curtain drain to the field. Defendant Rudnick testified as an adverse witness, admitting that no part of the easement agreement limited the number of people in plaintiff's building who would be serviced by the septic field.

After close of plaintiff's case, defendant moved for a finding in his favor, which was denied. Defendant's expert, Robert Wollschlager, testified that the Karney proposal to build a swale and curtain drain would be a modification of the septic field and that overuse of a septic field could be a factor in its failure. A former business tenant, Robert

Stumpf, who leased space in plaintiff's building also testified that he had 37 employees working in the building in 1985, 47 in 1986 and 21 in 1987.

Defendant Rudnick testified on his own behalf, stating that plaintiff-partner Koch first contacted him by phone about septic problems in 1984 or 1985 and that he agreed to have his landscaper bring in additional topsoil to level off low spots on the septic field. He testified that he did not want to let plaintiff go through with the latest work plan because it involved adding a swale to his land which might decrease the land's value and because it called for a curtain drain along the south boundary line of his property, very close to the north wall of a third party's building located on an adjacent piece of land. Defendant testified that he feared the curtain drain might cause the collapse of the building and that he would be held liable for any damage since the curtain drain was located on his property. Defendant also testified that he was not opposed to plaintiff replacing or repairing the existing items in the septic field, as is his right under the declaration of easement. In closing arguments, plaintiff asked for $2,065 in damages for its cost of pumping out the sewers as well as a court order directing defendant to comply with the easement agreement to allow plaintiff to do the work Karney proposed on the septic field.

On September 28, 1989, the trial court entered its findings of fact and conclusions of law, and entered judgment in favor of the defendant and against the plaintiff. The trial court found that 45% of the septic field was inoperable and that plaintiff had not repaired or maintained the portion of the septic field on its property as required by the easement agreement.

The trial court concluded that "if any occupant fails to maintain those portions of the Easement Parcel that is [sic] on their parcel, which plaintiff claims defendant has failed to do on parcel 3, the nondefaulting party must send written notice itemizing the default to the defaulting party and give him 10 days after receipt to correct the deficiency or proceed diligently to complete the correction of the deficiency." The court found that plaintiff had given oral but no written notice to defendant as required by the easement agreement. The court also found that plaintiff had failed to maintain the portion of the septic field on its own property in violation of the easement agreement. The court concluded that because plaintiff failed to meet these two requirements in the declaration of easement, the court could not order defendant to specifically perform the contract. The court also concluded, as a matter of law, that the proposed work on parcel 3 of the installation of a curtain drain and swale was not a "repair or

maintenance" as defined by section 3.02 of the declaration of easement and therefore was not required by the easement agreement. Plaintiff appeals the court ruling in favor of defendant on the specific performance action. Defendant appeals the court order dismissing his counterclaim.

Initially, we consider whether the trial court erred when it dismissed the counterclaim filed by defendant. Defendant's counterclaim sought unspecified damages and a permanent injunction against plaintiff's alleged excessive use of the septic field. The trial court dismissed the counterclaim after hearing arguments from the parties. Plaintiff argued, first, that defendant failed to allege any injury or damage and therefore the counterclaim was based on speculation and was not ripe for adjudication. Plaintiff argued, second, that defendant's use of the septic field on his own property was prohibited by law under the Private Sewage Disposal Licensing Act (Licensing Act) and administrative rules promulgated pursuant to statute, specifically, 77 Ill. Adm. Code §905.20(c) (1985). Section 905.20(c) prohibits the use of a private sewage system by more than one user. It states: "The use of a private sewage system [that] serve[s] more than one property is prohibited except where a common property is provided under joint ownership of the users, or where the system is under public jurisdiction or managed by a district established for the maintenance of such systems." (77 Ill. Adm. Code §905.20(c) (1985).) Plaintiff reasons that since the easement agreement contains a severability clause, the defendant's use of the septic field is unenforceable but the rest of the easement agreement is enforceable.

■ On appeal defendant argues that the court order was premature if it dismissed his claim because of the applicability of the Licensing Act and section 905.20(c) of the Illinois Administrative Code. Defendant argues that a review of that law by the trial court would have been inappropriate since defendant was not then seeking to tie into the sewer line but was merely trying to preserve his rights under the easement agreement and to enjoin the plaintiff from misusing the septic field in the future.

We believe the Licensing Act and Administrative Code do not apply here. The trial court made no findings of fact as to the applicability of the Administrative Code. Defendant has not attempted to tie into the septic system, and application of section 905.20 to defendant's complaint would have been premature. We therefore need not consider the applicability of section 905.20 in this appeal.

■ Defendant's counterclaim also sought a declaratory judgment by the court upholding defendant's right to tie into the septic system.

On appeal, defendant asks this court to uphold its right to tie into the system, even taking into consideration section 905.20(c), while plaintiff asks this court to hold that defendant has no such right. Again, the trial court made no finding of fact or law as to defendant's right to tie into the system in the future. The trial court merely dismissed defendant's counterclaim, which sought damages and prevention of plaintiff's excess use of the septic field. His right to use the field in the future is not properly before this court.

In support of plaintiff's motion to dismiss the counterclaim, plaintiff also charged that defendant failed to allege damages he had suffered, either of a compensatory nature or damages which would permit the court to properly order an injunction against plaintiff to prevent overuse of the septic field in violation of the declaration of easement.

The record indicated that defendant's complaint sought unspecified compensation for damage to the septic field. The complaint alleged that the septic field was designed and the permit was issued to serve the needs of 50 people but that plaintiff has permitted excessive use of the system with an average of 75 people using the system in each of the past three years. Defendant alleged that this excessive use "threatens to cause premature failure of the field and has severely damaged said field and diminished the capacity of the field to operate sufficiently well to service the present and future needs of both [parties]." On appeal, defendant bolsters this position by pointing to allegations made in plaintiff's complaint. Specifically, plaintiff's complaint alleges that the septic field is failing and that, as a result, standing water is on defendant's land and raw sewage percolates to the surface of the septic field on both plaintiff's and defendant's property.

Defendant's counterclaim also alleged plaintiff violated section 2.02 of the easement agreement, which states that plaintiff can use the septic field as is "reasonably necessary to cause the least interference with the use and enjoyment, and to permit the maximum development, of the burdened parcels." Defendant argues that an action should not be dismissed for legal insufficiency unless it clearly appears that no set of facts could be proven under the pleadings which would entitle plaintiff to relief. *Arnold v. Leahy Home Building Co.* (1981), 95 Ill. App. 3d 501, 506, 420 N.E.2d 699, 703.

 To state a cause of action, a complaint must be both legally and factually sufficient; it must set forth a legally recognized claim as its basis for recovery and must plead facts which bring the claim within the legally recognized cause of action alleged. Failure to meet both requirements mandates dismissal of the complaint. (*Sider v. Out-*

*board Marine Corp.* (1987), 160 Ill. App. 3d 290, 299, 513 N.E.2d 449, 454.) All facts properly pleaded are taken as true (*Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 148, 503 N.E.2d 246, 247); however, conclusions of law or fact unsupported by allegations of specific fact upon which the conclusions rest are not admitted as truth. *Stuart Town Homes Corp. v. Rosewell* (1988), 176 Ill. App. 3d 59, 63-64, 530 N.E.2d 1046, 1049.

■ We find that defendant's counterclaim fails to allege a current injury. Defendant alleged possible future damages he might suffer if he is unable to tie into the system. Defendant alleged that the field is "severely damaged" but failed to allege with specificity what those damages were. Defendant alleged that plaintiff's actions prevent the field from performing "sufficiently well," but does not specify any present damage defendant has suffered. The trial court granted plaintiff's motion to dismiss the counterclaim without prejudice and denied defendant's motion for leave to file an amended complaint. Nothing in the record indicates that defendant presented a proposed amended counterclaim or that he identified the grounds on which an amended counterclaim would be filed. Therefore, we must assume the trial judge acted within his discretion in refusing to permit any proposed amendment. (*Teter v. Clemons* (1986), 112 Ill. 2d 252, 492 N.E.2d 1340.) Defendant is not barred from seeking relief in the future when appropriate grounds exist. We find the trial court properly dismissed the counterclaim.

■ A motion to dismiss raises the question of whether the pleading sufficiently states a cause of action and does not invite a review of other ancillary material. (*Heritage Standard Bank & Trust Co. v. Trustees of Schools of Township No. 37 North* (1980), 84 Ill. App. 3d 653, 659, 405 N.E.2d 1196, 1201.) In considering plaintiff's motion to dismiss the counterclaim, the trial court could not and did not interpret the respective future rights of the parties under the easement agreement. We need not address this argument.

Finally, we consider whether the trial court properly found in defendant's favor on plaintiff's suit for specific performance. The relationship between plaintiff and defendant is that of owner of a dominant estate (plaintiff) and owner of a servient estate (defendant). The easement agreement provides that the easement is not exclusive and that both plaintiff and defendant can use the portion of the easement that lies beneath their respective properties. Each landowner must repair and maintain in good condition the portion of the easement that lies on his property.

■ Use of an easement by one cannot preclude use by the other; but, rather, use by both must be permitted in accordance with their interests. (*Keessen v. Zarattini* (1969), 119 Ill. App. 2d 284, 292, 256 N.E.2d 377, 382.) No precise rule can be stated as to when the use by the owner of the servient estate or dominant estate is a reasonable use as distinguished from an unreasonable use. It is a question of fact to be determined from the facts and conditions prevailing. *Madonna v. Golick* (1978), 60 Ill. App. 3d 914, 917, 376 N.E.2d 1111, 1113.

Plaintiff alleged in its complaint that its reasonable and lawful right to use the septic field is being blocked by defendant's refusal to permit reasonable and necessary repairs to and maintenance of the septic field. Plaintiff alleged it made written demands on defendant to enter defendant's land so plaintiff could do the necessary work but that defendant had refused entry. Plaintiff sought specific performance from defendant of his obligation under the easement agreement. Plaintiff alleged it would suffer irreparable injury in that: (1) its employees will be unable to use the building's sanitary and plumbing facilities; and (2) occupants of its building would be exposed to a substantial health hazard and plaintiff could face prosecution for violation of health ordinances.

After considering testimony from several witnesses and examining documentary exhibits, the trial court ruled in defendant's favor following trial. The court held, as a matter of law, that (1) plaintiff failed to comply with the notice provision and failed to do repair work on its own land, both of which are required in the declaration of easement, and therefore was not entitled to a judgment for specific performance from defendant, and that (2) the installation of a curtain drain and swale on defendant's property was not a repair or maintenance as defined by the declaration of easement.

On appeal, plaintiff contends the trial court erred in its interpretation of the notice requirement of section 3.03 of the declaration of easement, which provides, in pertinent part, that "in the event that any occupant shall fail to properly maintain those portions of the Easement Parcels which are from time to time located on its Parcel *** any other Occupant may send written notice of such failure to the defaulting party." Section 3.03 then describes what the notice "shall" contain, *i.e.*, an itemized statement of deficiencies.

■ Plaintiff contends that the trial court improperly interpreted the language "may send" in the declaration of easement as a mandatory notice requirement. Illinois courts interpret the word "may" as permissive and "shall" as mandatory in private contracts. (*Lukasik v. Ridell, Inc.* (1983), 116 Ill. App. 3d 339, 345, 452 N.E.2d 55; *Northwestern*

*Traveling Men's Association v. Crawford* (1906), 126 Ill. App. 468, 480.) We find that the trial court was in error in finding as a matter of law that the notice requirement in the declaration of easement was mandatory when clearly that document states "may send."

Plaintiff next argues that the trial court incorrectly interpreted the law and the easement agreement in finding that plaintiff had to satisfy its obligation under the easement before it could seek specific performance from defendant. Plaintiff argues that the law in *Hunter v. De May* (1970), 124 Ill. App. 2d 429, 259 N.E.2d 291, relied on by the trial court, clearly states that plaintiff must prove he has offered to perform his obligation under the contract, not that he has already performed. Plaintiff contends proof of his offer is found in the September 14 letter.

■ Initially, defendant argues that the easement agreement was drafted by plaintiff's lawyer and should therefore be strictly construed against plaintiff. We find nothing in the record to support this contention. Defendant contends the trial court ruled correctly in finding for the defendant on the complaint because the easement agreement clearly states that each occupant of a portion of the easement "shall" repair and maintain that portion of the easement. Although it is true that the easement agreement states that occupants of the separate parcels "shall *** repair and otherwise maintain" the septic field on their respective parcels, nothing in the easement agreement states that a party must commence or finish repair work on its parcel before it can demand that repair work be done on the parcel belonging to another. We find no such affirmative obligation and agree with the plaintiff that its commencement of repairs is not a prerequisite to a demand that defendant make or participate in repairs. In addition, we note that plaintiff contracted over several years to have extensive engineering proposals for work to be done on the field and, by the time the trial concluded, had received a permit for the proposed work from Cook County health department. These actions clearly demonstrate that plaintiff has taken substantial steps toward the repair of the septic field, including that portion on its own land.

■ Finally, we consider whether the trial judge erred in finding that the work plaintiff proposed to do on the septic field goes beyond the "repairs and maintenance" allowed under the easement agreement. Plaintiff's complaint alleged that defendant's refusal to permit the work to be done was an "unreasonable obstruction and interference with plaintiff's rightful use of the septic field easement." Both parties agree that the owner of an easement cannot make material alterations in the character of the easement if the alteration would place a greater burden on the servient estate or interferes with the use and enjoyment of the

servient estate. *Triplett v. Beuckman* (1976), 40 Ill. App. 3d 379, 352 N.E.2d 458.

Plaintiff argues that the swale and curtain drain are necessary repairs to maintain the septic field in working condition. Plaintiff's expert engineer, Karney, testified at trial that simply repairing the existing system would not alleviate the problem of excessive storm water on the septic field, which interferes with its proper function. Plaintiff argues that "necessary use" in the easement agreement has been defined as reasonably necessary for the full enjoyment of the premises (*Flower v. Valentine* (1985), 135 Ill. App. 3d 1034, 482 N.E.2d 682) and that, therefore, it has a right to repair the system so as to permit the use of the easement. What repairs might be reasonably necessary is a question of fact. *Doan v. Allgood* (1923), 310 Ill. 381, 141 N.E. 779.

Plaintiff cites to several cases which support its argument that alterations can be made to an existing easement if the owner of the dominant estate can show that the changes are necessary for the use and enjoyment of his easement. *Ogilby v. Donaldson's Floors, Inc.* (1958), 13 Ill. 2d 305, 148 N.E.2d 758; *Flower v. Valentine*, 135 Ill. App. 3d 1034; *Continental Illinois National Bank & Trust Co. v. Village of Mundelein* (1980), 85 Ill. App. 3d 700, 407 N.E.2d 1052; *Triplett v. Beuckman*, 40 Ill. App. 3d 379.

In *Ogilby*, the supreme court affirmed the trial court, which ordered the owner of a servient estate to remove steel posts and barrels on the easement and restrict parking so as to provide the owner of the dominant estate clear ingress and egress of an alley, as required by the easement agreement. The court held that permitting the owner of the servient estate to park cars on the easement would cause "congestion and interference" with the purpose of the easement. *Ogilby*, 13 Ill. 2d 305.

In *Flower*, the appellate court found the trial court improperly ordered the owner of the servient estate to remove bushes and a barbecue from an easement while holding that owner of the dominant estate was entitled to an injunction against interference with his use of the easement. The court noted that the owner of a dominant estate is entitled to the necessary use of the easement, which is defined as such use as is reasonably necessary for the full enjoyment of the easement. *Flower*, 135 Ill. App. 3d at 1039.

In *Continental Illinois National Bank & Trust Co.*, the appellate court upheld the Village of Mundelein's right to replace a 27-inch sewer line with a 48-inch sewer line on an easement, finding that the change was reasonably within the purpose of the original easement agreement. The court noted that the village engineer testified that the present sewer was "overloaded," "worn out" and "in need of replacement." It

held that the village's "use must be allowed a practical interpretation in accordance with the reasonable need to be expected in the future." *Continental Illinois National Bank & Trust Co.*, 85 Ill. App. 3d at 705-06.

In *Triplett*, the appellate court found the trial court erred when it permitted the owner of the dominant estate in an easement to take down a disheveled bridge and replace it with a causeway that limited the recreational use of the servient owner's lake. The court held that while the owner of a dominant estate has a duty to keep the easement in repair, he cannot materially alter the character of the easement if it will place a greater burden upon the servient estate. *Triplett*, 40 Ill. App. 3d at 381-82.

Plaintiff contends that these cases support his position that he can do whatever is reasonably necessary to permit him to continue to use the easement as long as it does not interfere with defendant's use and enjoyment. Plaintiff argues that its expert, Karney, testified at trial, without challenge, that a curtain drain and swale are needed to alleviate design faults in the existing septic system to enable the system to function properly.

Defendant argues that these cases and others also stand for the proposition that the owner of a dominant estate cannot greatly burden or interfere with the use and enjoyment of the servient estate. (*Beggs v. Ragsdale* (1983), 120 Ill. App. 3d 333, 457 N.E.2d 1079; see also *Keessen v. Zarattini*, 119 Ill. App. 2d 284.) Defendant argues that he is liable for the cost of maintaining the septic field on his land, and he states that plaintiff's proposed repairs to the septic field are designed to permit the septic field to service an increased number of users, over and above the users originally contemplated while interfering with his right to quiet enjoyment of his own land.

■■ "Repair" means "only to restore after decay," not to "alter or add onto." (*Kaufman v. Shoe Corp. of America* (1960), 24 Ill. App. 2d 431, 164 N.E.2d 617.) Maintain is said to be the "up-keep or preservation of the condition of the property, including the cost of ordinary repairs necessary and proper from time to time for that purpose." (*Bogan v. Postlewait* (1970), 130 Ill. App. 2d 729, 731, 265 N.E.2d 195.) Maintenance involves preserving or preventing something from falling into a state of disrepair. *Harding v. Chicago Park District* (1975), 34 Ill. App. 3d 425, 428, 339 N.E.2d 779; see also *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 522 N.E.2d 215.

Defendant cites the *Kaufman* case, which involved the determination of the obligations of a landlord and tenant under a lease agreement to install heating equipment in a building. *Bogan* is also a landlord-tenant case where the court considered who should pay to replace a worn-

out air compressor on the premises. In *Harding*, the appellate court reversed a jury finding that the Chicago park district was negligent in its maintenance of a park road often used for drag racing. In *Harding*, the court defined maintenance of a roadway as filling in potholes and repairing deteriorated portions of the road. In *Ross*, the appellate court held that the City of Chicago was under no obligation to erect a median barrier on a portion of State-controlled Lake Shore Drive just because the city contracted with the State to "repair and maintain" the road.

Defendant also relies on *Flower* and *Continental Illinois* to support his argument that the owner of a dominant estate cannot materially alter an easement if it places a greater burden on the owner of the servient estate than that contemplated in the easement agreement. Defendant argues that this greater burden is evident in plaintiff's intention to modify the septic field to permit it to use the septic field for more than the 50 users for which it was originally intended. Defendant argues that expanding the use of the septic field is not the same as increasing the size of the sewer line in *Continental Illinois* because, in that case, only the underground pipe size was increased while here the plaintiff intends to add a swale at ground level and a curtain drain underground located close to the foundation of his existing building. Defendant argues that, under the easement agreement, he is required to pay the cost of maintaining the field on his property and should not be forced to pay for a new and improved septic field presumably designed to handle plaintiff's more than 50 users.

Trial court evidence established that for several years, the septic field served more than 50 people, though the field was constructed with a permit allowing use by 50 people. Plaintiff's expert Karney testified that overuse was not the reason for the system's failure, and defendant's expert Wollschlager testified that if 40% to 50% of the system was not working, as appeared to be the case, then "the number of [people using the system] would be irrelevant." The easement agreement itself provided no limitation on the number of tenants and employees plaintiff could house in the office building and contained no language limiting use of the septic field to a specific maximum number of users.

■■ We find defendant's arguments are persuasive. As owner of the dominant estate, plaintiff has a duty to maintain the easement according to the easement agreement and has a right to make such changes as will permit it to use the easement for the purpose granted. But plaintiff's action may not greatly burden or interfere with defendant's use and enjoyment of his own land. Both defendant's and plaintiff's experts testified that a curtain drain near a building foundation raised a possibility of risk to the building foundation, though plaintiff's

expert Karney testified that standard engineering procedures permitted the use of curtain drains next to buildings "all the time" without detriment to the building. The other change proposed, the swale, would add a depression along a 100-foot stretch of defendant's land. Defendant testified at trial that this depression could affect his property value and interfere with his use and enjoyment of his land.

 We hold that the trial court was correct when it determined, as a matter of law, that the installation of a curtain drain or swale was not a repair or maintenance as permitted in the declaration of easement. Though the court must consider whether the curtain drain and swale are reasonable and necessary for the full use and enjoyment by the dominant estate, Illinois authority provides that these changes can only be allowed where they do not impose an undue burden on the servient estate. In *Continental Illinois*, the court permitted a larger sewer line to be installed, but that line was underground. Our case more closely resembles *Triplett*, where the court denied the owner of a dominant easement the right to place a causeway through the servient owner's lake when the existing bridge came into disrepair. Here, plaintiff seeks to change the contours of defendant's land.

 For all the foregoing reasons, we hold that the trial court did not err when it granted plaintiff's motion to strike defendant's counterclaim. We find that the trial court erred when it held as a matter of law that plaintiff was not entitled to specific performance on its easement because it failed to give written notice to defendant of work that should be done and failed to make repairs on its own property before requesting that work be done on defendant's property and hold that the easement agreement does not require written notice nor does it require plaintiff to repair the septic field on its own land prior to its demand that defendant make repairs on the servient parcel. We affirm the trial court determination that installing a curtain drain and swale is not a repair or maintenance under the express terms of the easement agreement. Accordingly, we affirm the dismissal of the counterclaim and affirm the judgment in favor of defendant and against plaintiff on the complaint.

Judgment affirmed.

RAKOWSKI, P.J., and EGAN, J., concur.