2024 IL App (2d) 240121
No. 2-24-0121
Opinion filed September 23, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOHN MARTINEZ, | ) | Appeal from the Circuit Court |
| | ) | of Kane County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22-SC-2097 |
| | ) | |
| PRESTIGE IMPORTS, INC., | ) | Honorable |
| | ) | Todd B. Tarter, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Jorgensen and Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, John Martinez, appeals the Kane County circuit court's order granting summary

judgment in favor of defendant, Prestige Imports, Inc. Because the parties' sales contract

disclaimed any automobile warranties arising under the Magnuson-Moss Warranty–Federal Trade

Commission Improvement Act (Magnuson-Moss Warranty Act) (15 U.S.C. § 2301 *et seq*. (2018)),

we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      On June 2, 2022, plaintiff filed a two-count small-claims complaint alleging that defendant

had sold him a 2013 Chevrolet Camaro that, one day after the sale, sustained an "engine fail[ure]."[1] Plaintiff argued that defendant breached implied warranties of merchantability under (1) the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.* (2018)) (count I) and (2) section 2L of the Consumer Fraud and Deceptive Business Practices Act (Act) (810 ILCS 505/2L (West 2020)) (count II). As a result of these alleged breaches, plaintiff sought approximately $5400 of repair costs from defendant. The matter was set for an arbitration hearing to take place on May 3, 2023. Following the hearing, arbitrators entered an award in favor of defendant, and plaintiff filed a notice of rejection of the award.

¶ 4    A jury trial was then scheduled. On August 28, 2023, plaintiff filed his pretrial materials for the court; the exhibits attached included a copy of the pertinent "Buyers Guide," which was affixed to the window of the purchased Camaro. The guide, which is a fill-in-the-blank form promulgated under the Code of Federal Regulations (Code) (16 C.F.R. § 455.2 (2017)), included checkboxes for the seller to indicate whether any "warranties for this vehicle" included "implied warranties only" or a "dealer warranty." Only one box on the guide was checked, indicating that the car included only "implied warranties" in lieu of any "dealer warrant[ies]." An explanation under this checked box reads:

---

[1] The complaint did not identify any specific engine issues that the car was experiencing. Certain service estimates contained within the record describe a myriad of issues such as (1) a faulty heater, (2) front seats that would not recline, (3) faulty tire pressure, (4) a missing or broken paddle shifter, and (5) a windshield that needed to be replaced. One March 14, 2022, invoice indicated that the car's "check engine light came on" but that it seemed to nonetheless be driving normally.

"The dealer doesn't make any promises to fix things that need repair when you buy the vehicle or afterward. But *implied warranties* under your state's laws may give you some rights to have the dealer take care of serious problems that were not apparent when you bought the vehicle." (Emphasis in original.) *Id.*

¶ 5        Underneath, a section entitled, "Systems Covered," included space for the seller to further detail the warranties attaching to the Camaro sale. Under this section, the seller wrote, "15 day 500 mile limited powertrain warranty per IL Public Act 099-768" (see Pub. Act 99-768 (eff. July 1, 2017)), in reference to the implied warranty of merchantability arising under the Act (815 ILCS 505/1 *et seq.* (West 2022)). A separate section of the guide, entitled, "Non-Dealer Warranties for this Vehicle," included other boxes that the seller could check to indicate additional, nondealer warranties for the Camaro. For instance, boxes could be checked to indicate that a manufacturer's warranty applied to the vehicle or whether any "other used vehicle warranty applies." However, none of these latter boxes were checked. A copy of the pertinent buyer's guide can be found below:

¶ 6    On August 29, 2023, defendant filed its answer and affirmative defense to plaintiff's complaint. As its affirmative defense, defendant argued that the provisions of the purchase order, buyer's guide, and extended service contract waiver all indicated that the Camaro would be sold "as is," meaning it was subject to only the 15-day, 500-mile limited power train warranty required under the Act, which could not be disclaimed pursuant to Illinois law. Thus, defendant argued that no "warranty of merchantability applied to the sale of the *** Camaro to Plaintiff under the

Magnuson-Moss Act and/or [the] Illinois Uniform Commercial Code [(collectively, UCC)]." On August 30, 2023, plaintiff filed his motion to strike defendant's affirmative defense, arguing that (1) plaintiff was prejudiced by the affirmative defense being filed so close to trial, (2) defendant's disclaimer argument did not constitute a valid affirmative defense, and (3) defendant did not disclaim any warranties. On September 7, 2023, the trial court vacated the trial date.

¶ 7     On January 19, 2024, the court held a hearing on plaintiff's motion to strike. During the hearing, the court flatly rejected plaintiff's argument that defendant "did not properly disclaim any implied warranties" arising under the UCC (810 ILCS 5/1-101 *et seq.* (West 2022)). The court noted that the purchase order for the Camaro indicated that the sale would be "as is" and that only one box had been checked on the buyer's guide, which then went on to describe only the section 2L implied warranty of merchantability under the Act. Thus, the court denied plaintiff's motion because it determined that defendant appeared to have a valid disclaimer defense. After hearing the court's ruling, plaintiff suggested that he consequently had "no case" and would voluntarily withdraw count II:

> "So given your ruling and given the fact that 'as is' appears to be present in the transaction, I really don't have a case.
>
> So my thinking was, your Honor, if that's agreeable with you and opposing counsel, I am willing to waive any sort of presentment of the—putting anything in writing. If opposing counsel wants to make an oral motion for summary judgment on Count [I]— Count [II], by the way, I don't have it and I withdraw it. The only viable case that I thought would be Count [I] which is the UCC.
>
> If opposing counsel wants to make an oral motion for summary judgment based on the presence of the 'as is' clause and the absence of the implied warranty, I will concede

that based on your ruling that judgment—that a summary judgment should be entered."

Consequently, defendant made an oral motion for summary judgment as to count I, which the court granted. In sum, the court entered an order denying plaintiff's motion to strike, approving the voluntary dismissal of count II, and granting defendant's oral motion for summary judgment as to count I.

¶ 8    Plaintiff timely appeals.

¶ 9                                II. ANALYSIS

¶ 10    On appeal, plaintiff argues that the trial court's denial of his motion to strike defendant's affirmative defense was error, because (1) a plain reading of the operative contractual materials demonstrates that the parties intended the UCC warranty to apply to the Camaro sale, (2) "as is" language appearing in the contract materials was a nullity, and (3) alternatively, the contract is ambiguous and should be construed against defendant. We address these arguments in turn.

¶ 11    Pursuant to section 2-314 of the UCC, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1) (West 2022). Thus, a warranty under the UCC is implied in a sales contract where a seller is a merchant with respect to goods of that kind. *Id.* In order to be merchantable under this section, goods must be "fit for the ordinary purposes for which [they] are used." *Id.* § 2-314(2)(c). Under section 2-316 of the UCC,

> "to exclude or modify the implied warranty of merchantability or any part of it[,] the language must mention merchantability and in case of writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states,

for example, that 'There are no warranties which extend beyond the description on the face hereof.' " *Id.* § 2-316(2).

"[U]nless the circumstances indicate otherwise, all implied warranties [under the UCC] are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty ***." *Id.* § 2-316(3)(a). "Warranties[,] whether express or implied[,] shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant." *Id.* § 2-317.

¶ 12    Under the Act, a separate implied warranty of merchantability arises in which purchasers of used cars are guaranteed that their purchased vehicles "will be free of a defect in [the] power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of [a sales agreement]." 815 ILCS 505/2L(h) (West 2022). Unlike the implied warranty of merchantability arising under the UCC, however, a section 2L warranty cannot be disclaimed. *Id.* § 2L(c).

¶ 13    Summary judgment is proper where all relevant materials show no genuine issue of material fact and where the moving party is entitled to summary judgment as a matter of law. *Sameer v. Butt*, 343 Ill. App. 3d 78, 85 (2003). We review *de novo* a trial court's decision on a motion for summary judgment. *Id.*

¶ 14                                A. Plain Reading Analysis

¶ 15    First, plaintiff argues that a plain reading of the applicable portion of the sales contract demonstrates the parties' intention that both the UCC warranty and the section 2L warranty would pertain to the sale of his Camaro. When interpreting a contract, our primary goal is to give effect to the intent of the parties, as determined by the plain and ordinary meaning of the contract's

language. *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18. An ambiguity does not arise purely as a result of a disagreement amongst the parties. *Id.* Instead, an ambiguity arises where a contract's language is susceptible to more than one meaning. *Id.* We consider contracts as a whole, so that each portion thereof is given its plain and ordinary meaning. *Finch v. Illinois Community College Board*, 315 Ill. App. 3d 831, 836 (2000).

¶ 16 Here, plaintiff argues that the plain language of the buyer's guide, which was a portion of the contract and included a checked box next to the phrase "Implied Warranties Only," indicates the parties' intention that both the UCC warranty and the section 2L warranty applied to the Camaro sale. Plaintiff reasons that, otherwise, the guide would not include the plural word, *warranties*, instead of the singular word, "*warranty*." Furthermore, because the applicable contractual documents include language specifying that the terms of the buyer's guide override any contradictory provisions in the remaining sales documents, plaintiff argues that any other language in the remainder of the contract otherwise suggesting that the parties entered into an "as is" sale must be disregarded.

¶ 17 We disagree. Turning back to the buyer's guide, which plaintiff claims to be operative, it is true that the box next to "Implied Warranties Only" is checked. However, the plain language of the remaining portions of the buyer's guide makes clear that the use of the plural word, "warranties," meant to specify only that multiple implied warranties *may* be available to the buyer, not to definitively declare that multiple, uncited implied warranties were in fact available.

¶ 18 For instance, we turn to the language appearing below the checked box reading, "But implied warranties under your state's laws *may* give you some rights to have the dealer take care of serious problems that were not apparent when you bought the vehicle." (Emphasis added.) The word "may," as used here, is permissive and not mandatory. *Professional Executive Center v.*

*La Salle National Bank*, 211 Ill. App. 3d 368, 379 (1991) ("Illinois courts interpret the word 'may' as permissive and 'shall' as mandatory in private contracts."). Thus, this language allows for the issuance of multiple implied warranties but does not mandate it. The "Systems Covered" section of the buyer's guide, which plaintiff ignores, does go on to list the specific implied warranties applying to the sale. There, in a space left for the seller to expressly include any warranties applying to the sale, defendant listed only the section 2L warranty arising under the Act—no mention is made of the UCC warranty whatsoever. Accordingly, because plaintiff ignores portions of the buyer's guide to support his arguments, his reading of the guide fails to adhere to the principle of contract interpretation requiring parties to consider a contract in its entirety. For this reason, we reject plaintiff's argument.

¶ 19    Nonetheless, citing *Lambright v. S&M Auto Brokers, Inc.*, 2023 IL App (1st) 221944-U, plaintiff argues that "[t]he most recent case law is directly on point" and requires a different outcome. Once more, we disagree.

¶ 20    In *Lambright*, the First District reversed the defendant's grant of summary judgment as to the plaintiff's claim for breach of the implied warranty of merchantability arising under the UCC. *Id.*¶ 1. There, the plaintiff brought a claim under section 2-314 of the UCC after purchasing a vehicle that, soon after purchase, became faulty. *Id.* ¶ 7. The parties disputed whether the UCC warranty applied to the sale where the applicable buyer's guide "had a box marked with an X next to a section entitled 'Implied Warranties Only,' " which, similarly to the instant buyer's guide, included a disclaimer:

> "The dealer doesn't make any promises to fix things that need repair when you buy the
> vehicle or afterward. But implied warranties under your state's laws may give you some

rights to have the dealer take care of serious problems that were not apparent when you bought the vehicle." (Internal quotation marks omitted.) *Id.* ¶ 4. The buyer's guide also included a checked box "next to a section entitled 'Dealer Warranty.' " *Id.* ¶ 5. Underneath this section was an explanation indicating that " '[t]he dealer will pay 100% of the labor and 100% of the parts for the covered systems that fail during the warranty period.' " *Id.* The guide included a section for "systems covered," specifying that the vehicle's power train would be covered for 500 miles or 15 days following the sale, whichever occurred first. *Id.* However, the parties' one-page sales contract mentioned only the power train warranty described in the buyer's guide and further stated that "it 'expressly disclaim[ed] and exclude[d] any and all warranties, whether express or implied, with respect to the used vehicle sold hereunder, including any warranties of merchantability.' " *Id.* ¶ 16. Nonetheless, the sales contract went on to specify that the information displayed in the buyer's guide controlled over any contradicting portions in the sales contract. *Id.*

¶ 21 The defendant in *Lambright* argued that the Act's implied warranty of merchantability applied to the sale to the exclusion of the UCC warranty. *Id.* ¶ 14. On the other hand, the plaintiff argued that the applicable buyer's guide—which included a checked box purportedly guaranteeing multiple implied *warranties*—overrode the sales contract's disclaimer, thereby incorporating the UCC warranty into their sale agreement. *Id.* The First District ultimately agreed with the plaintiff, noting that, by including a checked box next to the phrase " 'Implied Warranties Only,' " "the buyer's guide informed [the] plaintiff of the existence of *multiple implied warranties* *** provided for by the state's laws." (Emphasis added.) *Id.* ¶ 17. "One such implied warranty [was] the UCC warranty in section 2-314 ***." *Id.* Thus, because the sales contract specified that the buyer's guide overrode any contrary provisions in the contract and, given "the lack of an express disclaimer

of the UCC warranty in the operative buyer's guide," the appellate court held that both warranties applied to the sale. *Id.* ¶ 22.

¶ 22    At the outset, we note that *Lambright* is unpublished, meaning it is not precedential, although we may consider the case as persuasive authority. Ill. S. Ct. R. 23(e) (eff. Feb. 1, 2023). Nonetheless, because we disagree with the *Lambright* decision and, in any event, find it distinguishable, we decline to follow it.

¶ 23    Similar to the instant buyer's guide, the guide in *Lambright* included an advisory below the "Implied Warranties Only" checkbox, informing the parties that "implied warranties under [the purchaser's] state's laws *may* give [the purchaser] some rights to have the dealer take care of serious problems that were not apparent when you bought the vehicle." (Emphasis added and internal quotation marks omitted.) *Lambright*, 2023 IL App (1st) 221944-U, ¶ 4. Again, the word "may" as used in personal contracts is permissive and does not denote a mandatory requirement. See *Professional Executive Center*, 211 Ill. App. 3d at 379. Thus, this language, which the First District inexplicably failed to consider when analyzing the contract, signified that multiple implied warranties *may* be available to the plaintiff, not that they in fact *were* available. For this reason, any language in the remaining *Lambright* sales documents disclaiming the UCC warranty was not inconsistent with the buyer's guide and should have been considered along with the rest of the contract. *Finch*, 315 Ill. App. 3d at 836 (contracts must be construed as a whole). Because the First District did not adhere to the principles of contract interpretation while analyzing the buyer's guide there, we decline to adhere to the reasoning employed in *Lambright*.

¶ 24    Regardless, even if—for argument's sake—we found the case to be properly reasoned, the instant matter is clearly distinguishable. In *Lambright*, multiple boxes were checked on the buyer's guide, which suggested the existence of multiple warranties. *Lambright*, 2023 IL App (1st)

221944-U, ¶¶ 4-5. Here, on the other hand, only one box signifying the potential for implied warranties was checked. Additionally, here and unlike in *Lambright*, the "Systems Covered" portion of the buyer's guide included a citation of the public act giving rise to the section 2L warranty, suggesting that only that warranty applied to the sale. For all of these reasons, we disagree with plaintiff's argument that a plain reading of the applicable portion of the buyer's guide establishes that the UCC warranty applied to the Camaro sale.

¶ 25                                         B. "As Is" Disclaimer

¶ 26    Next, we consider plaintiff's argument that any "as-is" disclaimers in the contractual documents were rendered a nullity by conjoined operation of the buyer's guide and federal law. Pursuant to the Code, used car sellers must affix a buyer's guide to any car being sold, which should include all disclosures required by the Code as well as any pertinent warranty information. 16 C.F.R. § 455.3(a) (2017). The final warranty terms of any car sale must be "identified in the contract of sale and summarized on the copy of the window form." *Id*. § 455.4.

¶ 27    Here, plaintiff interprets the Code to mean that "all warranty disclosures must be made in a single document, and all other disclosures are of no consequence." Thus, according to plaintiff, because the instant buyer's guide offered multiple implied warranties to plaintiff and because the guide must include all final warranty terms, any "as-is" disclaimers in the remainder of the contract are nullified and must be disregarded. We disagree.

¶ 28    Plaintiff's argument fails because it relies on a flawed premise—that the buyer's guide offered both the section 2L warranty and the unmentioned UCC warranty. However, as we have explained above, the buyer's guide did not operate to offer both of these implied warranties. Instead, pursuant to the "Systems Covered" section of the guide, only the section 2L warranty was made available to plaintiff. For this reason, the buyer's guide accurately conveyed exactly which

warranties would become available upon the sale of the Camaro—the section 2L warranty only—in compliance with the Code. *Id*. §§ 455.3(a), 455.4. Consequently, any "as-is" disclaimer in the remaining contractual documents operating to disclaim the UCC warranty was inconsistent with neither the Code nor the buyer's guide itself, and plaintiff's argument must be rejected.

¶ 29                                        C. Ambiguities

¶ 30    Finally, we consider plaintiff's alternative argument that defendant's "violation of the disclosure requirements imposed by [the] Section 2L warranty makes the parties' contract ambiguous" and that such an ambiguity must be construed against defendant. If the words in a contract are reasonably susceptible to more than one meaning, then the contract is ambiguous. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). In such situations, any ambiguities must be resolved against the drafter. *Id.*

¶ 31    Here, plaintiff argues that defendant violated several portions of section 2L by (1) failing to include certain language concerning the section 2L warranty on the "face" of the parties' sales agreement, (2) failing to include "conspicuous" language concerning the section 2L warranty within the sales documents, and (3) failing to include a proper disclaimer in the buyer's guide that made clear that the UCC warranty did not apply to the sale. 815 ILCS 505/2L (West 2022). Thus, plaintiff reasons, the accumulated result of these violations rendered the parties' contract ambiguous, as the buyer's guide offered both the section 2L warranty and the UCC warranty, while the remaining contractual documents—which were apparently rife with statutory violations—disclaimed any implied warranties.

¶ 32    We disagree. As a starting point, we first note that, because plaintiff voluntarily withdrew count II of his complaint, we are not concerned with the question of whether defendant violated section 2L while drafting the parties' sales documents. Rather, we are concerned only with whether

any of the section 2L disclosures defendant drafted created ambiguities in the sales contract per plaintiff's argument. To this point, again, plaintiff's argument fails because it rests upon the flawed premise that the buyer's guide unequivocally operated to grant two warranties—the section 2L warranty and the UCC warranty—to plaintiff. From this fallacious starting point, plaintiff argues that the "as-is" language contained in the remaining sales documents purportedly disclaiming the UCC warranty conflicts with the buyer's guide, thereby rendering the cumulative sales contract ambiguous. However, as we have stated, the buyer's guide offered only one warranty to plaintiff— the section 2L warranty—meaning any language in the remaining sales documents disclaiming the UCC warranty was not inconsistent with the buyer's guide, which in turn means that the overall sales contract was not susceptible to more than one meaning, as required for it to be ambiguous. *Central Illinois Light Co.*, 213 Ill. 2d at 153.[2] Because the sales contract was not ambiguous, plaintiff's argument fails.

¶ 33                                 III. CONCLUSION

---

[2]We further note that the sales contract included several documents explaining that the section 2L warranty applied to the sale, such as the retail installment contract and a power train warranty acknowledgement form, which plaintiff signed. While the purchase order included "as-is" language without specifically specifying that the section 2L warranty *did* apply to the sale, the retail installment contract makes clear that the buyer's guide controlled over any contradicting information in the remainder of the sales contract. Thus, the sales contract could not be seen as ambiguous, because the buyer's guide had only one clear reading—that only the section 2L warranty applied.

¶ 34    For the foregoing reasons, we affirm the Kane County trial court's grant of summary

judgment in defendant's favor.

¶ 35    Affirmed.

---

*Martinez v. Prestige Imports, Inc.*, **2024 IL App (2d) 240121**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 22-SC-2094; the Hon. Todd B. Tarter, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Dmitry N. Feofanov, of ChicagoLemonLaw.com, P.C., of Lyndon, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael J. Hoscheit, of Hoscheit, McGuirk, McCracken & Cuscaden, P.C., of St. Charles, for appellee. |

---