NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240432-U

NO. 4-24-0432

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 6, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CALEB WESTERMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Rock Island County |
| | ) | No. 22LA75 |
| v. | ) | |
| | ) | |
| JUNIOR'S AUTO MART, LLC, | ) | Honorable |
| | ) | John L. McGehee, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Harris and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's dismissal of plaintiff's second amended complaint arising out of the sale of a vehicle. The sales contract provided plaintiff with only a 15-day/500-mile limited power train warranty, and because plaintiff neither informed defendant of an alleged breach of implied warranty nor filed his complaint until after the 15-day warranty period expired, counts I, II, and III, which were premised upon a breach of implied warranty, were time-barred. Additionally, counts IV, V, and VI failed to state claims of common-law and statutory fraud for concealment and misrepresentation of the fact that the vehicle was a manufacturer buy-back where plaintiff failed to allege sufficient facts to establish that defendant had knowledge of the vehicle's buy-back status.

¶ 2    Plaintiff, Caleb Westerman, appeals the trial court's judgment dismissing his second amended complaint against defendant, Junior's Auto Mart, LLC, which alleged six counts arising out of plaintiff's purchase of an Audi A7 (Vehicle) from defendant. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4 Prior to the events giving rise to this case, the Iowa Secretary of State issued a certificate of title for the Vehicle to "Carousel Motors" of Iowa City, Iowa. The title listed the previous owner of the Vehicle as "Volkswagen Grp Amer Inc." The title also designated the Vehicle as a "Lemon Buy-Back." No reason for the designation appeared on the title.

¶ 5 At some point thereafter, ownership of the Vehicle was transferred to Manuel Carrillo Renteria and Yareli Castro. Renteria and Castro subsequently sold the Vehicle to defendant, which is a car dealership in Moline, Illinois. Defendant received a certificate of title issued by the Illinois Secretary of State that gave no indication that the Vehicle was a "Lemon Buy-Back."

¶ 6 On August 7, 2021, plaintiff purchased the Vehicle from defendant for $25,000. The terms of the sale were outlined in several relevant documents. The Bill of Sale for the transaction included a box containing the following bolded language:

> "The following applies to used motor vehicles only, except to the extent they are not subject to an implied warranty of merchantability, as noted below[ ]:
>
> Illinois law requires that this vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. 'Power train component' means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings. You (the consumer) will have to pay up to $100 for each of the first 2 repairs if the warranty is violated."

In another box, the Bill of Sale provided bolded language that read:

"Unless we make a written warranty, or enter into a service contract within 90 days from the date of this contract, to the extent not prohibited by applicable law, we make no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose. Notwithstanding anything to the contrary above, and subject to the exceptions referenced below*, our general disclaimer of warranties does not exclude, modify, or disclaim the implied warranty of merchantability or the remedies for breach of the implied warranty of merchantability before midnight of the 15th calendar day after delivery of a used motor vehicle or until a used motor vehicle is driven 500 miles after delivery, whichever is earlier. This provision does not affect any warranties covering the vehicle that the manufacturer may offer."

The Bill of Sale also stated, in bolded and underlined language:

"CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale."

¶ 7    Defendant provided plaintiff with a 15 day/500-mile limited power train warranty as part of the sale. The warranty was outlined in a document indicating that plaintiff was provided with power train coverage for 15 days or 500 miles from August 9, 2021. The document further provided:

"ANY IMPLIED WARRANTY OF MERCHANTIBILITY [*sic*] OR FITNESS FOR A PARTICULAR PURPOSE IS LIMITED TO THE DURATION OF THIS WRITTEN LIMITED WARRANTY EXCEPT WHERE THE DURATION OF

IMPLIED WARRANTIES ON USED VEHICLES IS LIMITED BY ILLINOIS STATE LAW, IN WHICH CASE THE ILLINOIS STATE LAW DURATION LIMIT SHALL APPLY. IMPLIED AND EXPRESS WARRANTIES ARE DISCLAIMED TO THE FULLEST EXTENT ALLOWABLE BY LAW.

THIS LIMITED WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS. YOU MAY ALSO HAVE OTHER RIGHTS UNDER ILLINOIS STATE LAW."

¶ 8    The sale documents also included a Buyer's Guide. Under the section that read "Warranties For This Vehicle," an "x" appeared in a box next to the option "Implied Warranties Only." Under that option appeared the following language:

"The dealer doesn't make any promises to fix things that need repair when you buy the vehicle or afterward. But *implied warranties* under your state's laws may give you some rights to have the dealer take care of serious problems that were not apparent when you bought the vehicle." (Emphasis in original.)

¶ 9    Finally, a document entitled "Secretary of State—Application for Vehicle Transaction(s)" was prepared with a copy provided to plaintiff. On this document, the box containing the language "Other Branded Title" and "State _____" was not check marked, and the line next to "State" was blank.

¶ 10    Over 10 months after the sale of the Vehicle, on June 28, 2022, plaintiff's counsel sent a letter to defendant stating that plaintiff (1) "hereby revokes acceptance of the car" he purchased, (2) canceled the contract with defendant, and (3) alleged that defendant breached warranties. Specifically, plaintiff informed defendant that the Vehicle was "unmerchantable because *** it was an undisclosed lemon law buyback."

- 4 -

¶ 11        On July 21, 2022, defendant's counsel responded with a letter asserting that plaintiff was entitled to no remedy, in part because, pursuant to the Illinois Vehicle Code (see 625 ILCS 5/1-100 *et seq.* (West 2022)), the requirement to disclose a "Lemon Law buyback" applied only through the first retail purchase. Defendant's counsel also alleged that plaintiff "had actual knowledge of the Lemon Law resale and prior sale to third parties before purchasing the vehicle."

¶ 12        On August 30, 2022, plaintiff filed a complaint against defendant that he subsequently amended. In plaintiff's second amended complaint, he asserted the following claims. In counts I and II, plaintiff alleged that defendant violated the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.* (2018)) by breaching the implied warranty of merchantability under section 2-314 of the Uniform Commercial Code (UCC) (810 ILCS 5/2-314 (West 2022)) (UCC Warranty) where the Vehicle "would not pass without objection in the trade under its contract description" and was "not fit for the ordinary purposes for which such goods are used." In count III, plaintiff alleged that defendant violated sections 2-608 and 2-711(1) of the UCC (810 ILCS 5/2-608, 2-711(1) (West 2022)) by failing to cancel the sale of the Vehicle or acknowledge plaintiff's revocation of acceptance as a result of "[d]efendant's breach of the implied warranty of merchantability." In counts IV and V, plaintiff alleged that defendant committed common law fraud by, respectively, failing to disclose that the Vehicle was a "lemon law buy-back" and misrepresenting that the Vehicle was not a "lemon law buy-back." In count VI, plaintiff alleged that defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2022)) by concealing the Vehicle's status as a "lemon law buy-back."

¶ 13        As the basis for these claims, plaintiff alleged that defendant "failed to disclose" that the Vehicle was a "lemon law buy-back *** despite the fact that it had a duty to disclose all

known material facts." Plaintiff "claim[ed] that the very status of a lemon law buy-back diminishes the value of the vehicle." Plaintiff explained that after purchasing the Vehicle, it "proved unreliable" due to an "apparently malfunctioning intake manifold runner flop and electronic steering." Accordingly, plaintiff sought to trade the Vehicle, but "no dealer would take it as a trade." Specifically, plaintiff alleged that Zimmerman Honda refused to purchase the Vehicle from him in April 2022 because "it had a branded title." Additionally, plaintiff "had difficulties finding an insurer" because in July 2022, "Elephant Insurance" and "Direct General" refused to insure it "because of its branded title." Plaintiff alleged that he "revoked his acceptance and canceled his contract" via letter to defendant, whom he claimed knew of the Vehicle's status as a Lemon Law buy-back. As support for his assertion that defendant knew of the Vehicle's status, plaintiff claimed that, by stating in its letter responding to his revocation of the contract that *plaintiff* knew of the Lemon Law buy-back status of the Vehicle, "Defendant admitted that it knew of this status as well."

¶ 14        On February 7, 2023, defendant filed a motion to dismiss plaintiff's second amended complaint. Defendant argued the following. Counts I and II should be dismissed because (1) plaintiff's claim was asserted after the 15-day period in which he could raise his objections, as set out in the limited power train warranty, and (2) a claim that an apparent title defect renders an automobile unmerchantable does not state a valid cause of action. Count III should be dismissed because a title deficiency cannot render a vehicle nonmerchantable and plaintiff failed to allege sufficient facts to establish that the Vehicle was a "nonconforming" good. Counts IV and V should be dismissed because plaintiff failed to allege that defendant knew of the Vehicle's Lemon Law status on the Iowa certificate of title, and in any event, there was no duty to advise plaintiff of that status. Finally, count VI should be dismissed because the Consumer Fraud Act does not apply to

transactions specifically authorized by laws administered by a regulatory officer acting under the statutory authority of Illinois. See 815 ILCS 505/10b(1) (West 2022). On this point, defendant reasoned that because (1) the Illinois Secretary of State administers the Vehicle Code, which in turn regulates the preparation and submission of vehicle title applications, and (2) plaintiff complained of the manner of completion of the certificate of title of the Vehicle, *i.e.*, that it did not disclose that the Vehicle was a Lemon Law buy-back, plaintiff was barred from raising a claim under the Consumer Fraud Act. Defendant also argued that there is no duty for a motor vehicle dealer to disclose a vehicle's Lemon Law buy-back to any second and subsequent purchasers. Defendant attached to its motion to dismiss an affidavit of Tommie Garton Jr., defendant's member and manager. According to Garton, the first time he saw the Iowa certificate of title for the Vehicle was when plaintiff's counsel sent his June 29, 2022, letter to defendant.

¶ 15   In his response to defendant's motion to dismiss, plaintiff argued that the sales documents failed to disclaim the UCC Warranty because the Buyer's Guide, which referred to multiple "implied warranties," overrode contrary language in the Bill of Sale. Plaintiff argued that because the Buyer's Guide referenced multiple "warranties," the UCC Warranty, which had a limitations period of four years (see 810 ILCS 5/2-725(1) (West 2022)), was not disclaimed. He further claimed that he properly pleaded that defendant breached the UCC Warranty because the defective title rendered the Vehicle such that it was not " 'fit for the ordinary purposes' " and would not " 'pass without objection in the trade.' " See 810 ILCS 5/2-314(2) (West 2022). Additionally, plaintiff asserted that revocation of the agreement as alleged in count III was proper because the Vehicle could not be insured or sold "for what it is supposed to bring on the market." He claimed that, as to counts IV and V, he properly pleaded that defendant had knowledge of, failed to disclose, and misrepresented the Vehicle's status as a Lemon Law buy-back. Finally, as

to count VI, plaintiff argued that defendant incorrectly argued that an exception applied to his claim under the Consumer Fraud Act.

¶ 16 On October 27, 2023, the trial court held a hearing on defendant's motion to dismiss. Defendant argued that it disclaimed all but the implied warranty in section 2L of the Consumer Fraud Act (815 ILCS 505/2L (West 2022)), which provides an implied warranty of merchantability only for a vehicle's power train for 15 days or 500 miles, whichever is earlier, and therefore, plaintiff failed to assert valid claims in counts I, II, and III by alleging only that the Vehicle's title was defective. The counts were particularly deficient, according to defendant, where plaintiff raised no objection within 15 days of the sale and where the complaint failed to allege sufficient facts to support those counts. Additionally, defendant argued that counts IV and V should be dismissed because plaintiff failed to sufficiently allege either that plaintiff owed a duty to disclose the history of the Vehicle or that defendant had knowledge of any title defect at the time of the sale. Defendant further argued that count VI was barred by the Consumer Fraud Act because plaintiff's claim boiled down to a complaint about the preparation of the Vehicle's title, which was a matter managed by the Illinois Secretary of State.

¶ 17 In response, plaintiff reasserted that his claims were legally sufficient because the UCC Warranty applied and he sufficiently pleaded that defendant knew of the Vehicle's title history but failed to disclose it to him at the time of the sale.

¶ 18 On February 15, 2024, the trial court granted defendant's motion to dismiss plaintiff's second amended complaint. In its order, the court determined that "the warranty provided by Defendant was for 15 days or 500 miles whichever is earlier." Accordingly, the court explained that counts I, II, and III must be dismissed pursuant to section 2-619 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-619 (West 2022)) because they were time-barred, having

been raised after the expiration of the 15-day implied warranty period. Additionally, plaintiff made no allegation of a defect occurring within 15 days of the sale that rendered the Vehicle "unfit for ordinary purposes" because plaintiff alleged only a title defect. The court further explained that the counts must also be dismissed pursuant to section 2-615 of the Civil Code (735 ILCS 5/2-615 (West 2022)) because, even if a title defect violated an implied warranty of merchantability, disclosure of a manufacturer buy-back was required only to the first retail purchaser per section 5-104.2(a) of the Vehicle Code (625 ILCS 5/5-104.2 (West 2022)) and it was undisputed that plaintiff was not the first retail purchaser after the manufacturer buy-back. The court explained that counts IV, V, and VI were dismissed pursuant to section 2-615 of the Civil Code because plaintiff provided no factual allegations that defendant (1) misrepresented the title history of the Vehicle at the time of purchase or (2) knew of the Iowa buy-back and concealed that fact. Additionally, the court reasserted that defendant had no duty to disclose a buy-back in the first instance, since the sale to plaintiff was not the first retail transfer.

¶ 19        This appeal followed.

¶ 20                                II. ANALYSIS

¶ 21        On appeal, plaintiff argues that the trial court erred in granting defendant's motion to dismiss his second amended complaint. A motion to dismiss pursuant to section 2-615 of the Civil Code "tests the legal sufficiency of the complaint." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). We must consider whether the allegations in the complaint, when considered in the light most favorable to the plaintiff, sufficiently establish a cause of action upon which relief can be granted. *Green*, 234 Ill. 2d at 491. We will not affirm the dismissal of a cause of action under section 2-615 unless it is "apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Green*, 234 Ill. 2d at 491. A motion to dismiss pursuant to section 2-619 "admits the

- 9 -

legal sufficiency of the complaint and raises defects, defenses or other affirmative matters, such as the untimeliness of the complaint, which appear on the face of the complaint or are established by external submissions." *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1144 (2001). These matters "act to defeat the plaintiff's claim, thus enabling the court to dismiss the complaint after considering issues of law or easily proved issues of fact." *Lipinski*, 325 Ill. App. 3d at 1144. "[W]hether the motion to dismiss was filed pursuant to section 2-615 or 2-619, our standard of review is *de novo*." *Lipinski*, 325 Ill. App. 3d at 1144.

¶ 22                                    A. Counts I, II, and III

¶ 23          We first consider counts I, II, and III. Plaintiff argues that the trial court improperly determined that these counts were time-barred because he raised his claims within the four-year limitations period under the UCC Warranty, which defendant failed to disclaim. He further contends that he properly pleaded that the title history of the Vehicle rendered it unmerchantable because he sufficiently alleged that the Vehicle would not " 'pass without objection in the trade under the contract description' " and was not " 'fit for the ordinary purposes for which such goods are used.' " (quoting 810 ILCS 5/2-314(2)(a), (c) (West 2022)). Defendant responds that it properly disclaimed all but the limited power train warranty found in the sale documents, which was "in compliance with" section 2L of the Consumer Fraud Act. Thus, defendant argues, by the express terms of the limited power train warranty, plaintiff had only 15 days in which to bring to its attention a defect, and said defect was limited to a power train component. Defendant asserts that, because plaintiff neither informed it of a defect nor filed his complaint within the 15-day limitations period, counts I, II, and III are time-barred, and in any event, plaintiff made no allegation of a defect relating to a mechanical component of the Vehicle, as he complained only of the Vehicle's status as a Lemon Law buy-back.

¶ 24    Section 2-314 of the UCC provides, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1) (West 2022). Thus, a warranty pursuant to the UCC is implied in a sales contract if the seller is a merchant as to goods of that kind. 810 ILCS 5/2-314(1) (West 2022). To be merchantable under section 2-314(2), goods must, *inter alia*, "pass without objection in the trade under the contract description" and be "fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2-314(2)(a), (c) (West 2022).

¶ 25    This UCC Warranty applies "[u]nless excluded or modified" pursuant to section 2-316. 810 ILCS 5/2-314(1) (West 2022). Per section 2-316(1), "words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other." 810 ILCS 5/2-316(1) (West 2022). While language to exclude or modify the implied warranty of merchantability must be conspicuous, "all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." 810 ILCS 5/2-316(2), 3(a) (West 2022). While warranties are to be construed as consistent with each other and cumulative, "if such construction is unreasonable the intention of the parties shall determine which warranty is dominant." 810 ILCS 5/2-317 (West 2022).

¶ 26    A separate implied warranty of merchantability is afforded to purchasers of used vehicles under the Consumer Fraud Act. Pursuant to section 2L(h), purchasers of used vehicles are ensured that their vehicles " 'will be free of a defect in [the] power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of [the sales] agreement.' " 815 ILCS 505/2L(h) (West 2022). Section 2L(h) further provides that a power train component means "the engine block, head, all internal engine parts, oil

pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings." 815 ILCS 505/2L(h) (West 2022). Unlike the UCC Warranty, a section 2L warranty may not be disclaimed. 815 ILCS 505/2L(c) (West 2022). However, a section 2L warranty "expires at midnight of the 15th calendar day after delivery of a used motor vehicle or when a used motor vehicle is driven 500 miles after delivery, whichever is earlier." 815 ILCS 505/2L(e) (West 2022). Moreover, if the section 2L warranty is breached, the buyer "shall give reasonable notice to the seller no later than 2 business days after the end of the statutory warranty period." 815 ILCS 505/2L(f) (West 2022).

¶ 27        Here, plaintiff contends that defendant failed to disclaim the UCC Warranty, for which a four-year limitations period applies, such that his counts I, II, and III were not time-barred. In support of this argument, he asserts that the Bill of Sale provided, "Information on the window form overrides any contrary provisions in the contract of sale." From this language, plaintiff proceeds to the Buyer's Guide, which he argues contained the final warranty terms of the transaction. Plaintiff argues that, because a checked box appeared next to the phrase "Implied Warranties Only," the parties intended that *both* the implied warranty of merchantability under section 2L of the Consumer Fraud Act *and* the UCC Warranty would apply to the sale. According to plaintiff, this is because the Buyer's Guide used the plural word, "*warranties*," which therefore must have referred to both the section 2L warranty and the UCC Warranty; had defendant intended to make only the section 2L warranty applicable, the Buyer's Guide would have used the singular word, "*warranty*." Plaintiff thus concludes that, because the Bill of Sale provided that the terms of the Buyer's Guide override any contradictory provisions in the remaining sale documents, any language purporting to disclaim the UCC Warranty must be disregarded.

¶ 28    Plaintiff relies upon *Lambright v. S & M Auto Brokers, Inc.*, 2023 IL App (1st) 221944-U, an unpublished order, as support for this argument. In *Lambright*, which also involved the sale of a vehicle, the parties disputed whether the implied warranties under both section 2L of the Consumer Fraud Act and section 2-314 of the UCC applied, or whether the defendant properly disclaimed the UCC Warranty in the contract documents. *Lambright*, 2023 IL App (1st) 221944-U, ¶ 8. After the trial court granted summary judgment in favor of the defendant on the plaintiff's claim of breach of the UCC Warranty—having found that the section 2L warranty applied to the exclusion of the UCC Warranty—the appellate court reversed the grant of summary judgment as to that claim. *Lambright*, 2023 IL App (1st) 221944-U, ¶¶ 10, 23. The court explained that, while the purchase contract explicitly provided only for a 15-day, 500-mile limited power train warranty and disclaimed all other warranties, it also included language indicating that the buyer's guide at issue " 'overrides any contrary provisions in the contract of sale.' " *Lambright*, 2023 IL App (1st) 221944-U, ¶ 16. Turning to the buyer's guide, the court noted that it provided for " 'implied warranties,' " was "written in the plural," and provided that " 'implied *warranties* under your state's *laws* may give you some rights to have the dealer take care of serious problems that were not apparent when you bought the vehicle.' " (Emphases in original.) *Lambright*, 2023 IL App (1st) 221944-U, ¶ 17. Because the implied warranties section was written in the plural, the court concluded that the buyer's guide "informed plaintiff of the existence of multiple implied warranties," one of which was the UCC Warranty. *Lambright*, 2023 IL App (1st) 221944-U, ¶ 17. Accordingly, the court determined that pursuant to the terms of the purchase contract, the implied warranties section of the buyer's guide—which encompassed the UCC Warranty by nature of being written in the plural form—overrode "the contrary provision in the contract" purporting to disclaim all but the power train warranty. *Lambright*, 2023 IL App (1st) 221944-U, ¶ 17.

¶ 29    Plaintiff's argument and his reliance upon *Lambright* are unconvincing. Beyond the fact that *Lambright* is an unpublished order, and therefore, not precedential (Ill. S. Ct. Rule 23(e) (eff. Feb. 1, 2023)), the very argument plaintiff raises was recently rejected in *Martinez v. Prestige Imports, Inc.*, 2024 IL App (2d) 240121, which we find persuasive.

¶ 30    In *Martinez*, the plaintiff alleged that he purchased a vehicle from the defendant that, "one day after the sale, sustained an 'engine fail[ure].' " *Martinez*, 2024 IL App (2d) 240121, ¶ 3. The sale of the vehicle involved a buyer's guide with a check-marked box next to the phrase "implied warranties only"; the language under that phrase provided, " '*implied warranties* under your state's laws may give you some right to have the dealer take care of serious problems that were not apparent when you bought the vehicle.' " (Emphasis in original.) *Martinez*, 2024 IL App (2d) 240121, ¶ 4. In a separate section on the buyer's guide, labeled "Systems Covered," the defendant included the phrase " '15 day 500 mile limited powertrain warranty.' " *Martinez*, 2024 IL App (2d) 240121, ¶ 5.

¶ 31    The plaintiff filed a complaint against the defendant, claiming that the defendant breached implied warranties of merchantability under both section 2L of the Consumer Fraud Act and the Magnuson-Moss Warranty Act. *Martinez*, 2024 IL App (2d) 240121, ¶ 3. The defendant filed an answer and affirmative defense, asserting that the contract documents, including the purchase order, buyer's guide, and extended service contract waiver, all indicated that the vehicle was subject only to the 15-day, 500-mile limited power train warranty mandated under section 2L of the Consumer Fraud Act. *Martinez*, 2024 IL App (2d) 240121, ¶ 6. The plaintiff filed a motion to strike the defendant's affirmative defense, arguing, *inter alia*, that the defendant did not disclaim any warranties. *Martinez*, 2024 IL App (2d) 240121, ¶ 6. The trial court rejected that argument, finding that the purchase order indicated that the sale would be "as is," and only the implied

warranty of merchantability consistent with section 2L was described on the buyer's guide. *Martinez*, 2024 IL App (2d) 240121, ¶ 7. Thus, the court denied the motion to strike the affirmative defense, and as a result, the plaintiff withdrew his claim of breach of implied warranty of merchantability under section 2L of the Consumer Fraud Act. *Martinez*, 2024 IL App (2d) 240121, ¶ 7. Moreover, the plaintiff conceded that, given the court's ruling, summary judgment would be warranted in the defendant's favor on the breach of warranty claim under the Magnuson-Moss Warranty Act. *Martinez*, 2024 IL App (2d) 240121, ¶ 7. Accordingly, the court granted the defendant's oral motion for summary judgment on that claim. *Martinez*, 2024 IL App (2d) 240121, ¶ 7.

¶ 32 The plaintiff appealed, arguing that the trial court erred in denying his motion to strike the defendant's affirmative defense because the operative contract materials indicated that the parties intended for both the implied warranty of merchantability pursuant to section 2L of the Consumer Fraud Act *and* the UCC Warranty to apply to the sale. *Martinez*, 2024 IL App (2d) 240121, ¶ 15. In making this argument, the plaintiff relied on the fact that the check-marked option, "Implied Warranties Only," on the buyer's guide used the plural term "warranties" instead of the singular term "warranty," such that the section 2L warranty could not have been the sole warranty made available to him. *Martinez*, 2024 IL App (2d) 240121, ¶¶ 15-16. He further argued that, because other contractual provisions provided that the terms in the buyer's guide overrode any contradictory provisions elsewhere in the sales documents, other language purporting that the sale was "as is" had to be disregarded. *Martinez*, 2024 IL App (2d) 240121, ¶ 16.

¶ 33 The appellate court rejected the plaintiff's argument, concluding that the defendant successfully disclaimed the UCC Warranty. *Martinez*, 2024 IL App (2d) 240121, ¶ 17. The court explained that, while the box next to " 'Implied Warranties Only' " on the buyer's guide was

checked, the plaintiff disregarded language immediately under that option stating only that " 'implied warranties under your state's laws *may* give you some rights.' " (Emphasis in original.) *Martinez*, 2024 IL App (2d) 240121, ¶ 18. The court concluded that the term "may" was permissive, not mandatory, and therefore, while it allowed for the issuance of multiple implied warranties, it did not require multiple warranties. *Martinez*, 2024 IL App (2d) 240121, ¶ 18. The court highlighted that the only warranty explicitly mentioned in the sales documents was the limited power train warranty that was consistent with section 2L of the Consumer Fraud Act. *Martinez*, 2024 IL App (2d) 240121, ¶ 18. Because the term "may" did not mandate the existence or issuance of multiple implied warranties, the language in the buyer's guide could not be interpreted "to definitively declare that multiple, uncited implied warranties were in fact available" to the plaintiff. *Martinez*, 2024 IL App (2d) 240121, ¶¶ 17-18.

¶ 34    Notably, the appellate court declined to follow *Lambright*, reasoning that the court in that case "inexplicably failed to consider" the contractual language providing that implied warranties *may* be available to the plaintiff. *Martinez*, 2024 IL App (2d) 240121, ¶ 23. Thus, the *Lambright* court improperly concluded that the UCC Warranty applied, in contravention of the principles of contract interpretation. *Martinez*, 2024 IL App (2d) 240121, ¶ 23.

¶ 35    Here, the contract documents provided that the 15-day/500-mile limited power train warranty (which is consistent with section 2L of the Consumer Fraud Act) was the only implied warranty that applied to the sale of the Vehicle. Additionally, as in *Martinez*, the Buyer's Guide indicated that additional implied warranties "may" provide some rights. Like *Martinez*, we conclude that the term "may," as used in that provision, is permissive, not mandatory, and therefore did not establish the existence of warranties beyond the limited power train warranty. Accordingly,

we determine that no contradiction exists between the contractual terms making the limited power train warranty available to plaintiff and the terms disclaiming all other implied warranties.

¶ 36        Therefore, we reject plaintiff's argument that, under the terms of the sales contract, the four-year limitations period attendant to the UCC Warranty applied to the sale. To the contrary, per the contract's plain terms, plaintiff had 15 days (and two additional business days within which to provide reasonable notice pursuant to section 2L(f) of the Consumer Fraud Act (815 ILCS 505/2L(f) (West 2020))) from August 9, 2021, in which to assert that the Vehicle did not comply with the power train warranty. However, plaintiff did not notify defendant of any purported breach until June 28, 2022, and he did not file his complaint until August 30, 2022. Accordingly, we conclude that plaintiff failed to comply with the 15-day statutory limitations period and the terms of the contract. We therefore hold that the trial court did not err in dismissing counts I, II, and III of plaintiff's second amended complaint pursuant to section 2-619 of the Civil Code. Because we conclude that these counts were time-barred, we need not consider the parties' additional arguments regarding whether a purported title defect can constitute a breach of an implied warranty of merchantability.

¶ 37                    B. Counts IV, V, and VI

¶ 38        Next, plaintiff argues that the trial court erred in dismissing counts IV, V, and VI. He asserts that, contrary to the court's findings, he properly pleaded that defendant "misrepresented and concealed the title history" of the Vehicle and that defendant "had actual knowledge of the Iowa buyback." He further contends that he properly alleged that defendant owed a duty to disclose the buy-back status of the Vehicle. Defendant responds that plaintiff failed to sufficiently allege that it had any knowledge of the Iowa title indicating the Vehicle's buy-back status or that it had a duty to inform plaintiff of the Vehicle's title history.

¶ 39    In counts IV and V, plaintiff alleged that defendant committed common law fraud. Specifically, count IV alleged fraudulent concealment, and count V alleged fraudulent misrepresentation. "In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996). A duty to disclose a material fact may arise, first, "if plaintiff and defendant are in a fiduciary or confidential relationship," or, second, "where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Connick*, 174 Ill. 2d at 500. However, "[t]here can be no concealment of a fact if the party alleged to be concealing the fact is unaware of it." *Stewart v. Thrasher*, 242 Ill. App. 3d 10, 16 (1993). This is because "a party cannot fraudulently conceal information that it does not know." *Abazari v. Rosalind Franklin University of Medicine & Science*, 2015 IL App (2d) 140952, ¶ 28.

¶ 40    Count V alleged fraudulent misrepresentation. To state a claim for fraudulent misrepresentation, a plaintiff must allege "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick*, 174 Ill. 2d at 496. "A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Connick*, 174 Ill. 2d at 496-97.

¶ 41    In count VI, plaintiff alleged that defendant violated the Consumer Fraud Act by concealing the Vehicle's buy-back status. To state a claim under the Consumer Fraud Act, a

plaintiff must allege "(1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Connick*, 174 Ill. 2d at 501. "[A] complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." *Connick*, 174 Ill. 2d at 501. "[F]or a material omission to be actionable [under the Consumer Fraud Act], the plaintiff must establish that the fact concealed was known to the defendant at the time of the concealment." *Rockford Memorial Hospital v. Havrilesko*, 368 Ill. App. 3d 115, 122 (2006).

¶ 42    Given the foregoing, an aspect common among all three claims that must be pleaded is the defendant's knowledge of the fact that has been concealed or misrepresented. Upon our review of the second amended complaint, we conclude that plaintiff failed to plead sufficient facts to support that defendant had knowledge of the Vehicle's buy-back status at the time of the sale to plaintiff. Although the Vehicle's Lemon-Law buy-back status was denoted on the Iowa certificate of title, ownership of the Vehicle subsequently passed to Renteria and Castro before defendant obtained it. When defendant obtained the Vehicle, there was no indication on the Illinois title held by defendant that the Vehicle was a Lemon-Law buy-back. In his complaint, plaintiff alleged, as the sole basis for defendant's knowledge of the Vehicle's title history, that "[a]ccording to Defendant's admission, contained in a letter of its counsel, Defendant told Plaintiff about the lemon law buy-back status of the car. It follows that Defendant knew about it." However, defendant's July 21, 2022, letter to plaintiff's counsel makes no admission that it told plaintiff about the buy-back status of the Vehicle or that it had any knowledge of the same. The letter provides only that *plaintiff* "had actual knowledge of the Lemon Law resale and prior sale to third parties before purchasing the vehicle," without any reference as to how plaintiff had such

knowledge. "[A] motion to dismiss does not admit allegations of the complaint if such allegations are in conflict with the facts disclosed in the exhibit[s]." *R & B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 922 (2005). Moreover, as the letter was sent approximately 11 months after the sale of the Vehicle and made no reference as to how plaintiff knew of the Vehicle's status, plaintiff's allegation that defendant must have had such knowledge at the time of the sale is conclusory. "Conclusions of law and conclusory factual allegations unsupported by specific facts are not deemed admitted." *Laubner v. JP Morgan Chase Bank, N.A.*, 386 Ill. App. 3d 457, 463 (2008).

¶ 43　　　　Thus, plaintiff failed to plead facts sufficient to allege that defendant knew of the Vehicle's status as a Lemon Law buy-back. This failure is fatal to both of plaintiff's common-law fraud claims and his Consumer Fraud Act claim, as a defendant cannot conceal or misrepresent a fact that was not known to it. *Stewart*, 242 Ill. App. 3d at 16; *Connick*, 174 Ill. 2d at 496; *Rockford Memorial Hospital*, 368 Ill. App. 3d at 122. Accordingly, because plaintiff failed to plead facts sufficient to support his common-law and statutory-fraud claims, we hold that the trial court did not err in dismissing counts IV, V, and VI pursuant to section 2-615 of the Civil Code.

¶ 44　　　　　　　　　　　　　III. CONCLUSION

¶ 45　　　　For the reasons stated, we affirm the trial court's dismissal of plaintiff's second amended complaint.

¶ 46　　　　Affirmed.